**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID FINKELSTEIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW FOX, LEAH SCHWELLER, and CRAIG DENSON <br><br> Defendants. | Civil Action No. <br><br> <u>CLASS ACTION</u> <br><br> **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff, David Finkelstein ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon the investigation of Plaintiff's counsel, which included a review and analysis of, *inter alia*, U.S. Securities and Exchange Commission ("SEC") filings by Charge Enterprises, Inc. ("Charge" or the "Company"), Charge's press releases and public statements, Charge's earnings call transcripts and presentations, media reports concerning Charge, documents publicly filed in *Charge Enterprises, Inc. v. Kenneth Adam Orr et al.*, Index No. 650109/2024 (Sup. Ct. N.Y. County), and other publicly available documents concerning Charge. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities fraud class action brought on behalf of all purchasers of Charge common stock between December 15, 2021 and February 28, 2024, both dates inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 ("Exchange Act").  The claims herein are asserted against certain of the past and present senior officers and directors of Charge.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

4.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391.  Many of the acts giving rise to the violations complained of herein, including the

dissemination of false and misleading information, occurred in this District.  Charge has its principal place of business in this District and Defendants committed tortious acts and transacted business in this District.

5.      In connection with the acts, transactions and conduct alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange and market.

**PARTIES**

6.      Plaintiff David Finkelstein purchased Charge common stock during the relevant period, as set forth in the accompanying certification incorporated herein by reference, and has been damaged thereby.

7.      Defendant Andrew Fox served as the Chief Executive Officer ("CEO") of Charge between October 2020 and August 2023.  Fox has served as a member of the Charge Board of Directors since October 2020, and served as its Chairman between September 2021 and August 2023.

8.      Defendant Leah Schweller served as the Chief Financial Officer ("CFO") of Charge since September 2021 until Charge's restructuring.

9.      Defendant Craig Denson served as the Interim CEO of Charge since August 2023, the Chief Operating Officer of Charge since October 2020, and as a member of the Charge Board of Directors since October 2020.

10.     Each of the Defendants was directly involved in the management or oversight of Charge at the highest levels and was privy to confidential information concerning the Company and its financial condition, risk factors, liquidity, and present and future business prospects, as

alleged herein.  In addition, the Defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11.     As officers, directors, and controlling persons of a publicly held company whose securities are registered with the SEC pursuant to the Exchange Act and traded on NASDAQ, which is governed by the provisions of the federal securities laws, the Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition, risk factors, liquidity, and present and future business prospects.  In addition, the Defendants had a duty to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Charge common stock would be based upon truthful and accurate information.  Defendants' false and misleading statements and omissions during the Class Period violated these specific requirements and obligations.

12.     The Defendants, because of their positions of control and authority as officers and/or directors of Charge, were able to, and did, control the content of various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period.  Each Defendant was provided with copies of the documents alleged herein to be misleading shortly before or after their issuance, and had the opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each Defendant was responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

## RELEVANT NONPARTIES

13.    Nonparty Charge is an electrical, broadband, and EV charging infrastructure company.  Charge is a Delaware corporation with its principal place of business in New York, New York.  Before its delisting, Charge common stock traded under the ticker symbol "CRGE" on the NASDAQ exchange.  On May 3, 2024, Charge terminated the registration of its common stock.  Charge's common stock was effectively cancelled by the confirmation of its bankruptcy plan, and as of May 6, 2024, traded under $0.01 per share.

14.    Nonparty KORR Acquisitions Group, Inc. ("KORR Acquisitions") is a registered investment advisor and is incorporated under the laws of the State of New York. KORR Acquisitions is controlled by Nonparty Kenneth Orr and Nonparty Cori Joy Orr.  KORR Acquisitions provided investment advisory services to Charge since at least the fourth quarter of 2020 until November 2023.

15.    Nonparty KORR Value, L.P. ("KORR Value") is a limited partnership formed under the laws of the State of Delaware.  Nonparty KORR Acquisitions is the general partner of KORR Value.

16.    Nonparty Kenneth Orr is the founder of the companies that eventually became Charge.  Orr was the controlling shareholder of Charge and served as its CFO and Chairman of its Board of Directors until September 2021. Orr is the principal operating officer of KORR Acquisitions and has the sole and dispositive power over shares held by KORR Acquisitions.

## BACKGROUND

17.    Charge is an electrical, broadband, and electric vehicle ("EV") charging infrastructure company.  Its business, including through its various subsidiaries, has two primary segments: infrastructure, which has a focus on EV charging stations and wireless network

communications; and telecommunications, which provides connections for voice calls and data to global carriers.

18.     However, the events that give rise to this Class Action are not connected to Charge's primary business ventures or revenue streams, but rather stem from reckless oversight of Charge's capital and materially misleading statements and omissions in connection therewith.

19.     Charge Enterprises initially incorporated under the name "E-Education Network, Inc." in 2003 and changed its name to GoIP Global Inc. ("GoIP Global") in 2005.  In April 2020, GoIP Global acquired Transworld Holdings, Inc.  In August 2020, GoIP Global changed its name to Transworld Holdings, Inc.  In January 2021, Transworld Holdings, Inc. changed its name to Charge Enterprises, Inc.

20.     Following this series of corporate transactions, Charge was uplisted with the NASDAQ Stock Exchange on April 12, 2022 with the ticker symbol "CRGE."

21.     Since at least the fourth quarter of 2020, Charge and its predecessor entities have employed KORR Acquisitions, a registered investment advisor controlled by Orr and Cori Joy Orr, to manage certain of its investments and excess liquidity.

22.     On June 19, 2020, GoIP Global disclosed that it "intends to engage KORR Acquisitions Group, Inc. as a consultant to provide certain consulting and advisory services to GOIP for fees to be agreed upon.  Kenneth Orr, Director, President and Chief Financial Officer of [GoIP], is Principal Operating Officer of KORR Acquisitions Group, Inc. KORR Acquisitions Group, Inc. is managing member of KORR Value, LP."

23.     During the fourth quarter of 2020, GoIP Global and KORR Acquisitions entered into what Charge described as an "informal at-will arrangement" under which the Company entrusted KORR Acquisitions to "provide investment advisory services on an as-needed basis"

(the "Informal Arrangement").  Specifically, Charge granted KORR Acquisitions "discretionary authority, without prior consultation with the Company, to buy, sell, trade and allocate in and among stocks, bonds and other securities and/or contracts relating to the same," on an "as-needed basis."  The Company stated that the value of the assets it invested with KORR Acquisitions under the Informal Arrangement "shall not exceed 20% of the Company's total assets."

24.     On December 15, 2021, before Charge was uplisted to NASDAQ and while its common stock was still trading over the counter, the Company's registration statement (filed on December 10, 2021 on Form S-1), became effective.  The Registration Statement described the Informal Arrangement as an "at-will" agreement for KORR Acquisitions to invest in "***marketable securities***" on the Company's behalf.  The Registration Statement reiterated that the investments were limited to "20% of our assets, and of that, less than 5% in illiquid assets," and stressed that "[w]e ***continuously monitor*** and review the value of our investments, including, but not limited to conducting a mark-to-market valuation of our investments ***on a weekly basis***, and, if ever we exceed 20%, we will liquidate marketable securities to stay within our intended maximum investment of 20% of our total assets."

25.     Before its uplisting on NASDAQ, Orr was the single largest stockholder in Charge, controlling more than eighty percent of the Company.  However, in connection with that uplisting, NASDAQ and the SEC raised a number of questions regarding Orr's involvement with Charge, particularly his having a majority ownership in the Company, his position as the Chairman of the Board of Directors, and the Informal Arrangement with the Company.

26.     Given NASDAQ and the SEC's concerns, Orr accordingly divested his interest in Charge to less than ten percent beneficial ownership of the Company, and stepped down as the Chairman of the Board of Directors effective September 14, 2021.

27.     Charge and KORR Acquisitions operated under the Informal Arrangement until June 2022, at which time they entered into a written Special Advisor Agreement whereby KORR Acquisitions agreed to "manage the Company's investment account" in exchange for a $500,000 up-front payment and a monthly payment of $25,000.  The agreement had a term of 1 year.

28.     In early to mid-2023, Charge informed Orr that it would require the return of certain Company funds to satisfy certain Company liabilities that were to come due and payable on in November 2023.  Specifically, in April 2023, Denson informed Orr that the Company would require the complete return of its invested funds by November 1, 2023 to address (1) certain accounts payable of its subsidiary, PTGi International Carrier Services, Inc., and (2) the outstanding debt due to its senior lender, Arena Investors, LP ("Arena").

29.     Charge's obligations to Arena, which were to become due and payable on November 19, 2023, were structured under two securities purchase agreements (the "Arena Notes").  In total, Charge had an outstanding principal balance of $27.8 million due under the Arena Notes.  In addition, Charge had a number of other outstanding debt obligations under other loan agreements that, while not immediately due in November 2023, contained cross-default provisions.

30.     Between May and November of 2023, Charge communicated frequently with Orr about the need for Orr and KORR Acquisitions to return the funds the Company had invested with KORR Acquisitions to enable the Company to satisfy its various debt obligations.

31.     In May 2023, Denson emailed Orr requesting the full withdrawal of Charge investments held by KORR Acquisitions.

32.     Orr and KORR Acquisitions did not return the funds as requested to do so in May. Schweller emailed Orr on July 25, 2023 requesting the immediate return of $10 million from the Company's investment accounts.

33.     Despite its previous requests for the return of Company funds, as of August 22, 2023, Charge still had $14 million invested with and under the management and control of KORR Acquisitions.  On that date, Denson again communicated with Orr about a schedule for Orr and KORR Acquisitions to return the Company's invested capital.  Under the drawdown schedule devised that day, Orr was to return to Charge $3 million by the first week of September 2023, $3 million between September 15-30, 2023, $6 million between October 15-30, 2023, and the remainder between November 1-10, 2023.  None of this – including that prior requests had been made and ignored, nor the drawdown schedule – was disclosed to investors.

34.     Orr and KORR Acquisitions failed to abide by this drawdown schedule.  Despite agreeing to return a total of $6 million in September, Orr and KORR Acquisitions had only returned $2.25 million by the end of that month.  Further, and despite their agreement to return $6 million in October, Orr and KORR Acquisitions only returned $1.75 million of Company funds in October 2023.  Thus, by the end of October, and despite agreeing to return $12 million of Company funds by the end of October, Orr and KORR Acquisitions had only returned $4 million.

35.     On November 1, 2023, Denson emailed Orr, reminding him that Charge's "loan with Arena is due this month . . . we need the Charge money returned ASAP this week."  Orr did not respond to this email in writing.

36.     On November 2, 2023, Denson and Orr spoke on the phone to discuss Orr and KORR Acquisitions' failure to adhere to the original drawdown schedule.  On that call, Orr proposed a revised drawdown schedule, offering to return $1 million by the end of the day, $3

million on November 6, $3 million on November 14, and the remainder by the "end of 2023, or perhaps in 2024."

37.     On November 3, 2023, Denson reiterated to Orr the need for an expeditious return of the funds, and that Charge was experiencing financial harm as a result of Orr's failure to return the funds, which could impact the Company's ability to continue as a going concern.  That same day, Denson and Orr discussed a third drawdown schedule: $1 million on November 3, $3 million early in the week of November 6, and $6.75 million by November 13 or 14.  Defendants did not cause Charge to inform investors of these developments either.

38.     Despite the various drawdown agreements, Orr only returned *$800,000* on November 3, and *$200,000* on November 6.

39.     Thus, by early November, 2023, after months of failing to receive the requested Company funds from Orr and KORR Acquisitions, Defendants knew that Charge was facing serious undisclosed liquidity problems.  As Denson reminded Orr, these funds were "***critical to [Charge's] liquidity***," despite the Company's representation several weeks prior that it had *more than $51,000,000 in cash and cash equivalents*.  Defendants therefore knew and understood that, if Orr and KORR Acquisitions failed to return the Company funds as requested, a default on the Arena Notes was nearly certain, and that this would lead to an "imminent cascade of negative consequences," namely, the invocation of cross-default provisions in the Company's other debt instruments.

40.     But, as described below in further detail, Defendants continued to paint a rosy picture of Charge's financial condition throughout the fall of 2023, despite knowledge that the funds held by KORR Acquisitions were "critical" to the Company's liquidity.  In fact, as late as

November 8, 2023, Charge expressed its expectation "***to have sufficient resources to meet [its]
current operating liquidity and capital requirements for the next 12 months***."

41.    The situation came to a head on November 13, 2023, when Orr advised Biehl that
the Company's funds were invested in KORR Value, a limited partnership whose General Partner
is KORR Acquisitions.   And, as Orr advised Biehl, the terms of the KORR Value Limited
Partnership Agreement, dated May 9, 2020, make Charge a limited partner in KORR Value and
grant to KORR Acquisitions, as General Partner, the "sole and absolute" right to limit redemptions
of limited partnership interests.   In accordance with KORR Value's Limited Partnership
Agreement, Orr informed Charge that KORR Acquisitions would be unable to return the requested
funds because they were "cross-collateralized" with other accounts and that those accounts were
"under water."

42.    Charge first informed the market of the dire situation it faced on November 21,
2023 in a Form 8-K filed with the SEC.   Despite its announcement that it had more than
$51,000,000 in cash several weeks prior, the Company stated that it had received a default notice
from Arena, and announced that its prior belief that it had "approximately $9.9 million of Company
assets . . . in the form of cash, cash equivalents, marketable securities or similar readily liquid
assets" was false; instead, these funds had actually been invested in KORR Value and were thus
"not immediately able to be liquidated or readily accessible."   The Company further warned that
if it "continues not to have sufficient liquidity to pay the principal and interest on the [Arena] Notes
. . . these circumstances could result in a default under other of the Company's debt instruments
and agreements that contain cross-default provisions."   As the Company explained, this situation
would likely "have a material adverse effect on the Company's liquidity, financial condition and

results of operations, and may render the Company insolvent and unable to sustain its operations and continue as a going concern."

43.     On December 6, 2023, in a Form 8-K filed with the SEC, Charge informed the market that it had received several additional default notices from Arena.  The December 6, 2023 8-K further stated that the Company was ceasing the operations of certain of its telecommunications subsidiaries in an effort to preserve liquidity.

44.     On January 25, 2024, in a Form 8-K filed with the SEC, Charge informed the market that the Company had received a foreclosure notice from Arena stating that, to satisfy the Company's outstanding indebtedness, Arena would be holding an auction, pursuant to the Uniform Commercial Code, to liquidate 100 percent of the equity interests in certain Charge subsidiaries at auction.

45.     On February 28, 2024, in a Form 8-K filed with the SEC, after months of restructuring efforts, Charge announced that it had entered into a Restructuring Support Agreement with two affiliates of Arena, which was to be implemented through the commencement of a voluntary Chapter 11 case in the U.S. Bankruptcy Court for the District of Delaware.

46.     On February 29, 2024, NASDAQ suspended trading of Charge common stock.

47.     On March 7, 2024, Charge filed its voluntary petition for bankruptcy under Chapter 11.  *See In re Charge Enterprises, Inc.*, Bankr. Case No. 24-10349 (Bankr. D. Del.).

48.     During the Class Period, Defendants issued materially false and misleading statements regarding the nature of Charge's relationship with KORR Acquisitions, the degree of control that KORR Acquisitions exercised over Charge assets that were "critical" to the Company's liquidity, and the nature of the investments that KORR Acquisitions held on the Company's behalf, as well as materially false and misleading statements about the Company's risk

policies, procedures, and compliance oversight functions, exposing the Company and its investors to substantial losses.

49.     Plaintiffs therefore bring this action under the federal securities laws to recover the investment losses they suffered as a result of Defendants' materially false and misleading statements and omissions of material fact.

## MATERIALLY FALSE AND MISLEADING STATEMENTS

50.     Defendants' materially false and misleading statements during the Class Period fall into two categories.   *First*, Defendants repeatedly misrepresented the nature of Charge's relationship with KORR Acquisitions, the degree of control that KORR Acquisitions exercised over Charge assets that were "critical" to the Company's liquidity, and the nature of the investments that KORR Acquisitions held on the Company's behalf.   *Second*, Defendants repeatedly certified the strength and adequacy of Charge's internal disclosure controls, as they were required to do under the Sarbanes-Oxley Act ("SOX"), despite clear weaknesses in those internal disclosure controls, evidenced by the failure of the Company's relationship with KORR Acquisitions that led to the Company filing for Chapter 11 bankruptcy protections.

51.     In addition to those made in various press releases, public statements, and earnings calls, Charge made a number of materially false and misleading statements in its quarterly and annual reports filed with the SEC.

52.     The following table sets forth the relevant filings that Charge made with the SEC that contain material misstatements or omissions during the Class Period, the date they were filed with the SEC, which of the Defendants signed those filings, which of the Defendants signed the SOX certifications accompanying those filings, and how they are referred to throughout this Complaint:

| Description of the Filing | Date of the Filing | Defendant Signatory to the Filing | Defendant Signatory to the Accompanying SOX Certifications | Abbreviation |
|---|---|---|---|---|
| S-1 Registration Statement | December 15, 2021 | Fox; Schweller; Denson | N/A | "Registration Statement" |
| Form 10-K | March 29, 2022 | Fox; Schweller; Denson | Fox; Schweller | "202110-K" |
| Form 10-Q | May 16, 2022 | Fox; Schweller | Fox; Schweller | "1Q2022 10-Q" |
| Form 10-Q | August 15, 2022 | Fox; Schweller | Fox; Schweller | "2Q2022 10-Q" |
| Form 10-Q | November 14, 2022 | Fox; Schweller | Fox; Schweller | "3Q2022 10-Q" |
| Form 10-K | March 15, 2023 | Fox; Schweller; Denson | Fox; Schweller | "2022 10-K" |
| Form 10-Q | May 10, 2023 | Fox; Schweller | Fox; Schweller | "1Q2023 10-Q" |
| Form 10-Q | August 14, 2023 | Fox; Schweller | Fox; Schweller | "2Q2023 10-Q" |
| Form 10-Q | November 8, 2023 | Denson; Schweller | Denson; Schweller | "3Q2023 10-Q" |
| Form 8-K | November 8, 2023 | Schweller | N/A | "November 8, 2023 8-K" |
| Form 8-K | November 21, 2023 | Schweller | N/A | "November 21, 2023 8-K" |

## I.    Materially False and Misleading Statements and Omissions About The Company's Relationship with KORR Acquisitions and Financial Condition

53.    Charge's false and misleading statements and omissions about its relationship with KORR Acquisitions, the degree of control that KORR Acquisitions exercised over Company funds, and the nature of the investments that KORR Acquisitions held on the Company's behalf predate Charge's uplisting on NASDAQ in April 2022.

54.    The Registration Statement described the Informal Arrangement as "informal" and "at-will."  Further, it stated that, under the Informal Arrangement, Charge entrusted KORR

Acquisitions to "provide investment advisory services on an as-needed basis."  Specifically, Charge granted KORR Acquisitions "discretionary authority, without prior consultation with the Company, to buy, sell, trade and allocate in and among stocks, bonds and other securities and/or contracts relating to the same," on an "as-needed basis" "not [to] exceed 20% of the Company's total assets."  These statements were materially false and misleading when made because the relationship was not "at-will," evidenced by KORR Acquisitions' failure to return Company funds in the summer and fall of 2023.  Further, it was materially false and misleading to represent that the Company was pursuing investments in "stocks, bonds and other securities and/or contracts relating to the same" when, in reality, the Company was invested in an illiquid limited partnership interest.  Finally, it was false and misleading to represent that the Company's investments with KORR Acquisitions did not exceed 20 percent of Company assets when those funds were "critical" to Charge's liquidity, and the failure to return them proximately caused a default on the Arena Notes.  The market was thus misinformed, beginning on December 15, 2021 (and likely before) about the fundamental nature of Charge's risk profile, liquidity, and likelihood of default on the Arena Notes.

55.    The 2021 10-K and the 2022 10-K made substantively identical false and misleading disclosures and omissions.

56.    The Registration Statement further stated that the investments managed by KORR Acquisitions were in the form of "***marketable securities***," and that management "***continuously monitor[s] and review[s] the value of our investments***, including, but not limited to conducting a mark-to-market valuation of our investments ***on a weekly basis***."  These statements were materially false and misleading when made because the Company had been invested in an illiquid partnership interest since May 9, 2020; illiquid partnership interests are, by definition, not

"marketable securities."  It was further materially false and misleading to represent that the Company "continuously monitors" its investments "on a weekly basis" when it was unaware for more than three years that it was invested in an illiquid limited partnership interest.

57.     Charge and KORR Acquisitions operated under the Informal Arrangement until June 2022, at which time they entered into a formal, written, Special Advisor Agreement whereby KORR Acquisitions agreed to "manage the Company's investment account" in exchange for a $500,000 up-front payment and a monthly payment of $25,000.  The Special Advisor Agreement contained no restrictions on the types of investments that KORR Acquisitions was permitted to pursue on Charge's behalf.

58.     Charge disclosed the existence of the Special Advisor Agreement in its 2Q2022 10-Q filed on August 15, 2022.  The 2Q2022 10-Q omitted to state any of the material terms of the Special Advisor Agreement, leaving the market to assume that the Special Advisor Agreement did not materially alter the terms of the Informal Agreement, disclosures surrounding which were, as explained above, materially false.

59.     The 3Q2022 10-Q, 2022 10-K, 1Q2023 10-Q, 2Q2023 10-Q, and 3Q2023 10-Q made substantively identical, misleading, and incomplete disclosures.

60.     As detailed above, in early to mid-2023, Charge informed Orr that it would require the return of Company funds invested with KORR Acquisitions to satisfy certain Company liabilities that were to come due in November 2023, including the Arena Notes.  Defendants knew and understood that, if Orr and KORR Acquisitions failed to return the Company funds as requested, a default on the Arena Notes was nearly certain, and that it would lead to an "imminent cascade of negative consequences," namely, the invocation of cross-default provisions in the Company's other debt instruments.  Accordingly, between August and November of 2023, Charge

and Orr agreed upon several drawdown schedules for the return of Company funds from KORR Acquisitions.  But Orr and KORR Acquisitions never lived up to any of these drawdown schedules, a fact of which Defendants were keenly aware.  But as the November 19, 2023 maturity date of the Arena Notes rapidly approached in September and October 2023, Charge never informed the market of the difficulties it was experiencing in having Orr and KORR Acquisitions return the funds, despite Charge's recognition that they were "critical" to its liquidity and ability to continue as a going concern.  Despite his various agreements, Orr returned only a fraction of the Company funds held by KORR Acquisitions.

61.     The 3Q2023 10-Q omitted to mention the difficulties the Company faced in seeking the return of its funds from Orr and KORR Acquisitions, nor any possibility of default on the Arena Notes.  Instead, the Company continued to paint a rosy picture of its financial condition and future prospects, as it claimed to have more than $51,000,000 in cash on hand.  In fact, in its Management Discussion and Analysis ("MD&A"), Charge stated that it "***expect[s] to have sufficient resources to meet [Charge's] current operating liquidity and capital requirements for the next 12 months***, including after accounting for the repayment of the $27.8 million that comes due and payable under the [Arena] Notes on November 19, 2023."  Further, when describing the Company's investment of excess liquidity, the MD&A noted management's belief that the Company did not have "***any material exposure***" with respect to its invested assets.  These statements were materially false and misleading when made because Charge management knew, at the *very latest* on November 3, 2023 – but likely earlier – that the Company was facing a serious liquidity crisis and risk of default under the Arena Notes on account of Orr and KORR Acquisitions' failure to return the Company funds.

62.     Also on November 8, 2023, and despite knowledge of Orr and KORR Acquisitions'
failure to return the Company funds, Charge noted in the November 8, 2023 Form 8-K that it was
"well underway in strategic planning for the future[.]"   This filing, too, made no mention of Orr
and KORR Acquisitions' failure to return the funds, and was thus materially false and misleading.

63.     That same day, following Charge's release of its quarterly earnings in the 3Q2023
10-Q, Charge held an earnings call, where Denson and Schweller answered a number of analyst
questions.   In response to a question from an H.C. Wainwright analyst about the Company's
balance sheet, Schweller stated that the Company was "managing [its] balance sheets and . . . [has]
***the proper liquidity to meet [its] operational needs and service [its] debt***."   Additionally, in
response to a question from an Alliance Global Partners analyst about the Company's near-term
debt maturity, Denson stated that Charge was "***on track to fully pay the outstanding notes*** which
have an aggregate face value of $27.8 million on or before the maturity date of November 19,
2023."   These statements were materially false and misleading when made because Charge
management knew, at the *very latest* on November 3, 2023 – but likely earlier – that it faced a
serious risk of default under the Arena Notes on account of Orr and KORR Acquisitions' failure
to return the Company funds.

64.     Charge did not inform the market of the dire situation it faced until it issued the
November 21, 2023 8-K.   Despite its announcement that it had more than $51,000,000 in cash on
hand several weeks prior, the Company stated that it had received a default notice from Arena, and
announced that its prior belief that it had "approximately $9.9 million of Company assets . . . in
the form of cash, cash equivalents, marketable securities or similar readily liquid assets" was false;
instead, these funds had actually been invested in KORR Value and were thus "not immediately
able to be liquidated or readily accessible."   The Company further warned that if it "continues not

to have sufficient liquidity to pay the principal and interest on the [Arena] Notes . . . these circumstances could result in a default under other of the Company's debt instruments and agreements that contain cross-default provisions."   As the Company explained, this situation would likely "have a material adverse effect on the Company's liquidity, financial condition and results of operations, and may render the Company insolvent and unable to sustain its operations and continue as a going concern."

II.      **Materially False and Misleading Internal Disclosure Control Statements**

65.      Under the regulations and guidance promulgated by the SEC, companies whose stock is publicly traded in the United States – such as Charge – have important public reporting and disclosure obligations.

66.      Public companies are required to file with the SEC certain disclosure documents containing comprehensive information about their business operations and financial condition. Investors generally rely on the accuracy and transparency of these disclosures – as well as other public statements made by the company – when determining whether to invest.

67.      Public companies like Charge are required to maintain effective disclosure controls and procedures to ensure compliance with their SEC reporting obligations.   Members of the company's executive team must be involved in creating and designing these controls and must personally guarantee their effectiveness.

68.      Section 404 of SOX requires public companies to publish information in their annual and quarterly reports concerning the scope and adequacy of their internal control structure and assess the effectiveness of such internal disclosure controls and procedures.

69.      Section 302 of SOX requires a public company's CEO and CFO to provide certifications concerning their review of, and disclosure of information about, the company's

internal controls.   Specifically, pursuant to rules promulgated by the SEC to implement Section 302 of SOX, the CEO and CFO are required to certify in each periodic report that:

- he or she has reviewed the report;

- based on his or her knowledge, the report does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by the report;

- he or she and the other certifying officers:

  o are responsible for establishing and maintaining "disclosure controls and procedures" [i.e., controls and other procedures of an issuer that are designed to ensure that information required to be disclosed by the issuer in the reports filed or submitted by it under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and forms] for the issuer;

  o have designed such disclosure controls and procedures to ensure that material information is made known to them, particularly during the period in which the periodic report is being prepared;

  o have evaluated the effectiveness of the issuer's disclosure controls and procedures as of a date within 90 days prior to the filing date of the report; and

  o have presented in the report their conclusions about the effectiveness of the disclosure controls and procedures based on the required evaluation as of that date;

- he or she and the other certifying officers have disclosed to the issuer's auditors and to the audit committee of the board of directors (or persons fulfilling the equivalent function):

  o any fraud, whether or not material, that involves management or other employees who have a significant role in the issuer's internal controls; and

- he or she and the other certifying officers have indicated in the report whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of their evaluation, including any

corrective actions with regard to significant deficiencies and material weaknesses.

*Certification of Disclosure in Companies' Quarterly and Annual Reports*, Exchange Act Release 34-46427, § II.A (Aug. 29, 2002) (footnotes omitted).

70.    Throughout the Class Period, Defendants repeatedly and falsely certified to investors that they had established effective internal disclosure controls and procedures for Charge. As set forth above, some combination of Defendants Fox, Schweller, and Denson provided these disclosure control certifications in the 2021 10-K, 1Q2022 10-Q, 2Q2022 10-Q, 3Q2022 10-Q, 2022 10-K, 1Q2023 10-Q, 2Q2023 10-Q, and 3Q2023 10-Q.

71.    In the 2021 10-K, for example, Charge, through Fox and Schweller, stated:

Our disclosure controls and procedures are designed to ensure that information we are required to disclose in reports that we file or submit under the Securities Exchange Act of 1934, as amended (the "Exchange Act") is recorded, processed, summarized, and reported within the time periods specified in SEC rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure.

Our management, with the participation and supervision of our Chief Executive Officer and our Chief Financial Officer, have evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act) as of the end of the period covered by this Annual Report on Form 10-K.  Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that as of such date, our disclosure controls and procedures were, in design and operation, effective at a reasonable assurance level.

72.    Charge made substantively identical disclosures in the 1Q2022 10-Q, 2Q2022 10-Q, 3Q2022 10-Q, 2022 10-K, 1Q2023 10-Q, 2Q2023 10-Q, and 3Q2023 10-Q.

73.    Along with certain of Charge's SEC filings, some combination of Fox, Schweller, and Denson provided a certification concerning the Company's internal disclosure controls and procedures pursuant to Section 302 of SOX.  In her certification accompanying the 2021 10-K, for example, Schweller stated:

1. I have reviewed this Annual Report on Form 10-K of Charge Enterprises, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's fourth fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

4. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

74.     Schweller, along with some combination of Fox and Denson, provided substantively identical disclosures in the 1Q2022 10-Q, 2Q2022 10-Q, 3Q2022 10-Q, 2022 10-K, 1Q2023 10-Q, 2Q2023 10-Q, and 3Q2023 10-Q.

75.     These statements were false and misleading when made and failed to state material facts.  It was materially misleading for Defendants to represent that Charge's internal disclosure controls and procedures were effective during the Class Period when that was not the case, and Defendants repeatedly and successfully evaded those controls to perpetrate their fraud.  Among other things, Defendants knew or recklessly disregarded that KORR Acquisitions would not timely return funds that were "critical" to the Company's liquidity and ability to continue as a going concern, and knew or recklessly disregarded that KORR Acquisitions had invested these Company funds in an illiquid partnership interest.  Defendants also knew or recklessly disregarded that, as of November 2023, KORR Acquisitions' failure to return these funds virtually guaranteed that Charge would be unable to service the Arena Notes.  Defendants concealed this information until after Charge received a default notice from Arena.  By doing so, Defendants created the false impression that Charge had sufficient liquidity to service its debt and continue as a going concern.

76.     Defendants concealed the truth from the market, and Plaintiffs and other members of the Class suffered losses.

## SUMMARY OF DEFENDANTS' SCIENTER

77.     As alleged herein, Defendants acted with scienter in that Defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of the Company, or in their own name, during the Class Period were materially false and misleading.  Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary

violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Charge, and their control over and/or receipt of Charge's allegedly materially misleading statements, were active and culpable participants in the fraudulent scheme alleged herein.

78. Defendants knew and/or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public. The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company.

79. The Defendants, because of their positions with Charge, controlled the contents of Charge's public statements during the Class Period. The Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected. Because of their positions and access to material, non-public information, Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the investing public and that the positive representations that were being made were false and misleading. As a result, each of the Defendants is responsible for the accuracy of Charge's corporate statements and is, therefore, responsible and liable for the representations contained therein.

## LOSS CAUSATION

80. During the Class Period, as alleged herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Charge common stock and operated as a fraud or deceit on purchasers of Charge common stock. As detailed above,

when the truth about the Defendants' misconduct was revealed, the value of Charge common stock declined precipitously as the prior artificial inflation no longer propped up the price of Charge common stock. The decline in the price of Charge common stock was the direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the Charge common stock price decline negate any inference that the losses suffered by Plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to Defendants' fraudulent conduct. The economic loss, *i.e.,* damages, suffered by Plaintiff and other members of the Class was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Charge common stock and the subsequent decline in the value of Charge common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

81.     At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly and proximately caused the damages suffered by Plaintiff and other members of the Class. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of the nature of Charge's relationship with KORR Acquisitions, the degree of control that KORR Acquisitions exercised over Charge assets that were "critical" to the Company's liquidity, the nature of the investments that KORR Acquisitions held on the Company's behalf, and the sufficiency of the Company's internal disclosure controls.

82.     Throughout the Class Period, Defendants issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing the price of Charge common stock to be artificially inflated. Plaintiff and other Class members purchased Charge common stock at those artificially inflated prices, causing them to suffer damages as complained of herein.

83.     The primary cause of Charge stock losing all its value and Plaintiff and the Class sustaining damages therefrom arose from the materialization of the risks inherent in the lack of effective controls at Charge despite Defendants certifications to the contrary.

84.     Had the investing public been told the truth that Charge lacked effective financial and disclosure controls and was placing its working capital in non-marketable securities, lacked access to that capital, and could not meet loan commitments as a result there would have been no market for the Company's stock.

85.     The Company was, at least from its uplisting to NASDAQ, lacking the fundamental controls over its own cash that would allow for any truthful statements to be made about its financial position. The Company's failure was within the zone of risk the misstatements and scheme concealed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

86.     Plaintiff and the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are predicated upon omissions of material facts for which there was a duty to disclose.

87.     Plaintiff and the Class are also entitled to a presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and the fraud-on-the-market doctrine because the market for Charge common stock was an efficient market at all revenant times by virtue of the following factors, among others:

(a) Charge common stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient market;

(b) Charge regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases

on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c) Charge was followed by a number of securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. These reports were publicly available and entered the public marketplace.

88.   As a result of the foregoing, the market for Charge common stock promptly incorporated current information regarding the Company from publicly available sources and reflected such information in the prices of Charge common stock. Under these circumstances, all those who transacted in Charge common stock during the Class Period suffered similar injury through their transactions in Charge common stock at artificially inflated prices and a presumption of reliance applies.

## **NO SAFE HARBOR**

89.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pled in this complaint. None of the specific statements pled herein were identified as "forward-looking statements." To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying potential factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pled herein, defendants are liable for those forward-looking statements because at the time each of those forward-looking statements was made, the particular speak knew or should have known that the particular forward-looking statements was

false and/or the forward-looking statements was authorized and/or approved by an executive officer of Charge who knew that those statements were false when made.

**FIRST CAUSE OF ACTION**
**Violations of Section 10(b) of the Exchange Act and**
**Rule 10b-5(b) Promulgated Thereunder Against All Defendants**

90.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

92.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a) employed devices, schemes, and artifices to defraud;

(b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Charge common stock during the Class Period.

93.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Charge common stock.  Plaintiff and the Class would not have purchased Charge common stock at the prices they paid, or at all, if they had been aware that the market had been artificially and falsely inflated by Defendants' false and misleading statements.

94.     As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Charge common stock during the Class Period.

**SECOND CAUSE OF ACTION**
**Violations of Section 20(a) of the Exchange Act**
**Against All Defendants**

95.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

96.     The Defendants and/or persons under their control violated § 10(b) of the Exchange Act and Rule 10b-5 by their materially misleading statements and omissions described above, causing economic injury to Plaintiff and other members of the Class.  The Defendants acted as controlling persons of Charge within the meaning of § 20(a) of the Exchange Act.  By virtue of their positions as controlling persons, each of these Defendants is liable pursuant to § 20(a) of the Exchange Act for the acts and omissions of their co-defendants in violation of the Exchange Act.

97.     The Defendants acted as controlling persons of some or all of their co-Defendants because they each had the capacity to control, or did actually control, their co-Defendants in their violations of the securities laws.  Each of the Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to, and did, control or influence the business practices or conditions giving rise to the securities violations alleged herein, and the contents of the statements which misled investors about those conditions and practices, as alleged above.  By virtue of their high-level positions within Charge, participation in and awareness of the Company's operations, and intimate knowledge of the matters discussed in the public statements filed by the Company with SEC and elsewhere and disseminated to the investing public, Defendants had the power to influence and control, and did influence and control, directly

or indirectly, the decision-making of the Company, including the contents and dissemination of the false and misleading statements and omissions alleged above.  By reason of such conduct, Defendants are liable pursuant to § 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief and judgment, as follows:

(a) Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiff as the lead plaintiff and approving its selection of counsel;

(b) Awarding compensatory damages against Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial;

(c) Awarding Plaintiff's reasonable costs and attorneys' fees; and

(d) Awarding such other and further equitable and injunctive relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated: May 28, 2024

Respectfully submitted,

By: */s/ Lawrence M. Rolnick*
Lawrence M. Rolnick
Richard A. Bodnar
Frank T.M. Catalina
ROLNICK KRAMER SADIGHI LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 597-2800
lrolnick@rksllp.com
rbodnar@rksllp.com
fcatalina@rksllp.com

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

I, David Finkelstein, as to the claims possessed and asserted by me under the federal securities laws against certain current and former officers and/or directors of Charge Enterprises, Inc., hereby certify as follows:

1. I am familiar with the matters set forth herein and have reviewed the putative class action complaint against certain former officers and/or directors of Charge Enterprises, Inc. ("Charge").

2. My transactions in Charge securities between December 15, 2021 and February 28, 2024, both dates inclusive (the "Class Period"), are set forth in the chart attached hereto. I purchased 5,000 shares of Charge common stock during the Class Period at artificially inflated prices.

3. I did not purchase the securities of Charge that are the subject of this action at the direction of counsel, or to participate in this or any other action arising under the federal securities laws.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Charge common stock during the Class Period. I understand that the Court has the authority to select the most adequate plaintiff in this action.

5. During the three-year period preceding the date of this Certification, I have not served or sought to serve as lead plaintiff or representative party in any class action under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of the Class beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation, as ordered or approved by the Court.

7. I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 21st day of May, 2024.

David Finkelstein

David Finkelstein Trading in Charge Enterprises, Inc.

| Date | Transaction | Quantity | Price |
|---|---|---|---|
| 5/10/2022 | Buy | 2,000 | 3.50 |
| 9/14/2022 | Buy | 600 | 2.02 |
| 9/14/2022 | Buy | 597 | 2.02 |
| 9/14/2022 | Buy | 1 | 2.03 |
| 9/14/2022 | Buy | 1,802 | 2.02 |