## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAVID FINKELSTEIN, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | |
| ANDREW FOX, LEAH SCHWELLER, CRAIG DENSON, PHILIP P. SCALA, JUSTIN DEUTSCH, JAMES MURPHY, BARON DAVIS, BENJAMIN CARSON, JR., CHANTEL E. LENARD, GARY JACOBS, AMY HANSON, JACKY WU, KENNETH ORR, KORR ACQUISITIONS GROUP, INC., KORR VALUE, L.P., ARENA INVESTORS, LP, AI AMPED I, LLC, AI AMPED II, LLC, MT. WHITNEY SECURITIES, LLC, ARENA ORIGINATION CO., LLC, ARENA FINANCE MARKETS, LP, ARENA SPECIAL OPPORTUNITIES FUND, LP, ARENA SPECIAL OPPORTUNITIES PARTNERS, I, LP, ARENA STRUCTURED PRIVATE INVESTMENTS LLC, and ARENA INVESTORS GP, LLC, | § § § § § § § § § § § § § § § § § § § § § § | Docket No. 1:24-cv-04056-JMF |
| *Defendants*. | § § | |

## REPLY IN SUPPORT OF THE NON-KORR DEFENDANTS' MOTIONS
## TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

INCORPORATION BY REFERENCE .................................................................................... 1

ARGUMENT & AUTHORITIES ........................................................................................... 2

I.    Plaintiff fails to state a securities fraud claim against Fox. ................................... 2

    A.    Plaintiff's falsity allegations are imprecise and lack cogency. ................... 2

    B.    Plaintiff has not adequately pleaded fraudulent intent and relies entirely on a recklessness theory of scienter without showing unreasonableness on the part of Fox or others. ............................................ 4

II.   Plaintiff fails to state a securities fraud claim against Denson and Schweller. ............................................................................................................. 6

    A.    The FAC fails to plead fraud premised on the existence of the LPA. ....................................................................................................... 6

    B.    The FAC fails to plead fraud relating to Orr's divestment and the Side Letter. ................................................................................................ 10

    C.    The FAC fails to plead fraud relating to Charge's financial condition. .................................................................................................. 11

    D.    The FAC fails to plead fraud relating to discussions with Arena. ............ 12

    E.    The FAC fails to plead fraud relating to SOX certifications and related statements. ................................................................................... 13

III.  Plaintiff cannot rehabilitate his claims against the Director Defendants. .............. 15

    A.    Plaintiff still lacks a cognizable falsity allegation as to the Director Defendants. ............................................................................................. 15

    B.    Plaintiff's allegations still fall well short of creating a strong inference of scienter as to the Director Defendants. ................................. 16

IV.   The Section 20(a) claims remain deficient. ......................................................... 21

V.    Plaintiff fails to state a claim for common law fraud. .......................................... 22

CONCLUSION ................................................................................................................ 22

TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson News, LLC v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012).................................................................................8

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..........................................................................................22

*Brown v. China Integrated Energy, Inc.*,
    2013 WL 12124124 (C.D. Cal. Apr. 22, 2013) ................................................20

*Castellano v. Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001)........................................................................12, 15

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir.1996)................................................................................3

*City of Aus. Police Ret. Sys. v. Kinross Gold Corp.*,
    957 F. Supp. 2d 277 (S.D.N.Y. 2013)...............................................................8

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)..............................................................................7

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
    477 F. Supp. 3d 123 (S.D.N.Y. 2020)..............................................................19

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)...................................................................7, 14, 17

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006)..............................................................................8

*Fire and Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
    778 F.3d 228 (1st Cir. 2015).............................................................................5

*Freudenberg v. E\*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)........................................................14, 20

*Glob. Network Commc'ns, Inc. v. City of N.Y.*,
    458 F.3d 150 (2d Cir. 2006)..............................................................................8

*Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009).......................................................................19, 21

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995)............................................................................................3

*In re Aphria, Inc. Sec. Litig.*,
    2020 WL 5819548 (S.D.N.Y. Sep. 30, 2020)................................................................20

*In re Bayou Hedge Fund Litig.*,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007), *aff'd*, 573 F.3d 98 (2d Cir. 2009).............................18

*In re Biogen Inc. Sec. Litig.*,
    857 F.3d 34 (1st Cir. 2017).............................................................................................9

*In re Ceridian Corp. Sec. Litig.*,
    542 F.3d 240 (8th Cir. 2008) ..........................................................................................5

*In re Coinbase Glob., Inc. Sec. Litig.*,
    2025 WL 2779024 (D.N.J. Sep. 30, 2025) ....................................................................20

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...........................................................................14

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ................................................................................14

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)..........................................................................3, 5

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013)...........................................................................21

*In re Nat'l Instruments Corp. Sec. Litig.*,
    2024 WL 4108011 (S.D.N.Y. Sep. 6, 2024)..................................................................12

*In re Nielsen Holdings PLC Sec. Lit.*,
    510 F. Supp. 3d 217 (S.D.N.Y. 2021)...........................................................................19

*In re PetroChina Co. Ltd. Sec. Litig.*,
    120 F. Supp. 3d 340 (S.D.N.Y. 2015)...........................................................................14

*In re Toronto-Dominion Bank Sec. Litig.*,
    2018 WL 6381882 (D.N.J. Dec. 6, 2018).......................................................................20

*In re Union Carbide Class Action Sec. Litig.*,
    648 F. Supp. 1322 (S.D.N.Y. 1986)...............................................................................13

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*,
    921 F. Supp. 2d 197 (S.D.N.Y. 2013)............................................................................16

*LaPietra v. RREEF Am. L.L.C.*,
  738 F. Supp. 2d 432 (S.D.N.Y. 2010) ....................................................................13

*Long Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020) ....................................................................16

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
  601 U.S. 257 (2024) .............................................................................................15

*McIntire v. China MediaExpress Holdings, Inc.*,
  927 F. Supp. 2d 105 (S.D.N.Y. 2013) ....................................................................19

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) ...............................................................................................9

*Meyer v. Concordia Int'l Corp.*,
  2017 WL 4083603 (S.D.N.Y. July 28, 2017) .........................................................12

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ...........................................................................4, 12

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019) ......................................................................13

*Osan Ltd. v. Accenture LLP*,
  454 F. Supp. 2d 46 (E.D.N.Y. 2006) ......................................................................9

*Puddu v. 6D Global Techs., Inc.*,
  2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) .........................................................12

*Rapoport v. Asia Elecs. Holding Co.*,
  88 F.Supp.2d 179 (S.D.N.Y.2000) .........................................................................4

*Rosenfeld v. Lenich*,
  370 F. Supp. 3d 335 (E.D.N.Y. 2019) ....................................................................8

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007) .................................................................................8

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
  573 F.3d 98 (2d Cir. 2009) ...................................................................................4

*Salahuddin v. Jones*,
  992 F.2d 447 (2d Cir. 1993) .................................................................................4

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
  732 F. Supp. 3d 300 (S.D.N.Y. 2024) .............................................................13, 19

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.,*
    75 F.3d 801 (2d Cir. 1996)...................................................................................8

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994).................................................................................21

*Singh v. Cigna Corp.,*
    918 F.3d 57 (2d Cir. 2019)....................................................................................5

*Sjunde AP-Fonden v. General Electric,*
    2023 WL 6314939 (S.D.N.Y. Sep. 28, 2023)......................................................20

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.,*
    545 F. Supp. 3d 120 (S.D.N.Y. 2021)..................................................................20

*Stratte-McClure v. Morgan Stanley,*
    776 F.3d 94 (2d Cir. 2015)....................................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 309 (2007).....................................................................................2, 5, 10

*Wang v. Cloopen Group Holding Ltd.,*
    661 F. Supp. 3d 208 (S.D.N.Y. 2023)..................................................................20

*Williamson v. United States,*
    512 U.S. 594 (1994)............................................................................................16

*Wolff v. Rare Medium, Inc.,*
    210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003).........................9

*Wu v. GSX Techedu Inc.,*
    738 F. Supp. 3d 527 (D.N.J. 2024) ......................................................................20

*Yaroni v. Pintec Tech. Holdings Ltd.,*
    600 F. Supp. 3d 385 (S.D.N.Y. 2022)..................................................................18

**STATUTES**

15 U.S.C. §78u-4(b)(1)(B)............................................................................................16

## INTRODUCTION

Plaintiff's[1] opposition ("Opposition" or "Opp.," Dkt. 176) to the Fox, Denson and Schweller, and Director Defendant (collectively, the "Non-KORR Defendants") motions to dismiss is a crash course in avoidance tactics. It barely tries—never successfully—to articulate how anything the Non-KORR Defendants *actually said* was affirmatively false or misleading when they said it, and instead falls back repeatedly on a pure "material omission" mantra that the Supreme Court has emphatically rejected. It continues to lump all Defendants into an amorphous mass, without regard to who said or knew what, and when. It tries to fill the FAC's holes by embellishing—or completely inventing—allegations found nowhere in the FAC. And it grapples with precisely *zero* of the Non-KORR Defendants' authorities rejecting securities fraud claims like these.

The Court should reject Plaintiff's efforts to rehabilitate the flawed FAC, grant the Non-KORR Defendants' motions, and dismiss the FAC. And it should do so with prejudice, as Plaintiff has had more than enough opportunities to state a viable claim.

## INCORPORATION BY REFERENCE

Fox, Denson and Schweller, and the Director Defendants expressly adopt the other Non-KORR Defendants' arguments contained in this reply brief to the extent applicable to each Defendant group.

---

[1] Defined terms are as they appear in the Non-KORR Defendants' memoranda in support of their motions to dismiss: Dkts. 164 ("DD.MTD"), 170 ("Fox.MTD"), 171-1 ("D&S.MTD"). Unless otherwise noted, all internal quotation marks, citations, and footnotes from quoted material are omitted.

**ARGUMENT & AUTHORITIES**

**I.    Plaintiff fails to state a securities fraud claim against Fox.**

**A.    Plaintiff's falsity allegations are imprecise and lack cogency.**

**1.    Plaintiff fails to plead how the "Side Letter" between Orr and Arena impacted Charge, which alone compels dismissal under Rule 9(b) and the PSLRA's heightened pleading standard.**

Plaintiff insists that the terms of a purported contract, the so-called "Side Letter," were improperly omitted from Charge's public disclosures despite the fact that it was neither executed nor performed by anyone at the company. *See, e.g.*, FAC¶81.  That is neither plausible nor reasonable, much less cogent, as it must be under Rule 9(b) and the PSLRA. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 309, 314, 323-24 (2007) (stating that a strong inference must be "more than merely plausible or reasonable—it must be cogent").

By all accounts, this alleged "agreement" was not a "Charge" agreement to disclose— indeed, Charge was not even a party to it.  The FAC sources the "agreement" to an independent, third-party bankruptcy filing—KORR Acquisitions' Proof of Claim—rather than a Charge filing, email, board meeting, loan package, or even any other later-discovered company document or communication.  *See* FAC¶82 ("A copy of the Side Letter filed as an attachment to the KORR Acquisitions Proof of Claim is attached as Exhibit 2.").  The FAC does not allege the "agreement" was signed by Fox or any other Charge official—nor could it, as the only signatories to that exhibited "agreement" are Arena and its affiliates.  *Id.* at Ex. 2 (no signature by Orr or Fox).  To the extent that "execution of transaction documents shows knowledge," as Plaintiff puts it in his Opposition (at 29), Plaintiff has made clear that he has no such executed documents to show knowledge on behalf of Fox.

The FAC also makes clear that this "agreement" was publicly disclosed for the very first time *after* Arena foreclosed on Charge.  Nothing in the FAC explains how or when Fox might

2

have associated himself or Charge with the so-called side letter. The FAC instead offers only a conclusory "because-Kenny Orr-said-so" account of Fox's knowledge, which is insufficient to satisfy Rule 9(b) and the PSLRA. *See, e.g.*, FAC¶82 ("according to a Proof of Claim filed by KORR Acquisitions..."); Opp.8 ("Arena, Fox, Schweller, Denson, and the Director Defendants were fully aware of the Side Letter, and they intentionally misled shareholders regarding Charge's agreements with Arena.").

The FAC's account of the "side letter" also is self-defeating. The FAC makes no attempt to allege that Fox signed the "agreement" and explicitly states that Fox never performed thereunder. FAC¶85 ("Fox was either unwilling or unable to tender the other 4.5 million shares."). It is also clear that Orr withdrew his Proof of Claim for payment under the "side letter" *after* **Arena** (the only party that signed it) took over Charge in bankruptcy. What remains is the reasonable and plain inference that Arena and Orr had some side arrangement involving privately held Charge stock to which neither Fox nor the company were participants. This does not set forth a well-pled, or even a minimally pled, claim of fraud by omission. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1095 (2d Cir. 1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting claim "[we]re contradicted both by more specific allegations in the complaint and by facts of which [the court] may take judicial notice"); *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 267 (2d Cir.1996) (holding plaintiffs do not have "license to base claims of fraud on speculation and conclusory

allegations"); *Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir. 1993) (dismissing claim based on "wholly conclusory and inconsistent allegations"); *Rapoport v. Asia Elecs. Holding Co.,* 88 F.Supp.2d 179, 184 (S.D.N.Y.2000) (granting motion to dismiss where documents on which securities fraud claim purported to rely contradicted complaint's allegations).

Therefore, Plaintiff has failed to adequately plead that Fox or Charge had any obligation under the supposed "side agreement," much less one requiring public disclosure. Without such allegations, Plaintiff has failed to meet the heightened pleading standards of Rule 9(b) or the PSLRA.

### B. Plaintiff has not adequately pleaded fraudulent intent and relies entirely on a recklessness theory of scienter without showing unreasonableness on the part of Fox or others.

Allegations of ordinary acts labeled as recklessness, without a showing of unreasonable behavior by the defendants, cannot survive a motion to dismiss under the PSLRA and Rule 9(b). Instead, the Second Circuit has found allegations of recklessness sufficient where allegations "approximat[e] actual intent," *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015) (citation omitted), such as where defendants allegedly "failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000); *see also S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (finding sufficient recklessness in "[a]n *egregious* refusal to see the *obvious*, or to *investigate the doubtful*"). Plaintiff hardly attempts such a showing in the FAC or his Opposition.

Just as the sum of all zeroes is still zero, Plaintiff's repetition ad nauseum that "Defendants" collectively "knew or recklessly disregarded" some convenient fact does nothing to allege the requisite knowledge or recklessness. Fox and the other Management Defendants acted normally and within the common confines and duties of corporate officers of a

multimillion-dollar corporation. Yet Plaintiff would have the Court believe that (1) Fox—the Company's CEO—personally received and reviewed bank statements over his morning coffee; (2) those bank statements were *so damning* as to the true nature of Orr's holding of Charge's liquid capital that it was unreasonable to view them any differently; and (3) Fox simply brushed them aside. *See, e.g.*, FAC¶319; Opp. 6. Thankfully, Plaintiff included an excerpt of one such bank statement in ¶145 of the FAC—and that document is far less telling than Plaintiff claims.

The FAC thus ignores the realities of running a public company. Only in the FAC is a publicly-traded company's CEO single-handedly supposed to review bank statements with a detective's eye and a lunatic's paranoia. The reality is, like any company of Charge's size, Fox and the other Charge executives tasked capable professionals with reviewing and translating company statements for basic financial reporting, including basic reports on liquidity. Perhaps this is why courts have ruled time and again that allegations essentially accusing defendants of poor management or corporate negligence do not suffice. *See Singh v. Cigna Corp.*, 918 F.3d 57, 59-60 (2d Cir. 2019); *Fire and Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 246 (1st Cir. 2015); *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 249 (8th Cir. 2008).

Nowhere in the Opposition, much less the FAC, is it alleged that Charge was showing obvious signs of cash flow problems or that red flags were presented to corporate officers and ignored. *See Tellabs*, 551 U.S. at 314, 322-24, 326-27 (instructing case-by-case inquiries and requiring consideration of nonculpable explanations for the defendant's conduct). Nor is this a case where the D&Os sat on their hands after uncovering or being informed of general financial irregularities. *Cf.*, *e.g.*, *In re Livent*, 151 F. Supp. 2d at 428 (cited at Opp.30 n.10) ("D&T corrected every error it found, but given the magnitude of the misallocations uncovered, D&T

should have been alerted to the possibility of deliberate manipulation and expanded its sampling.").

Simply put, the facts alleged lead to a stronger inference that there was no problem to uncover—Fox and the other Non-KORR Defendants acted in good faith as they reasonably relied on internal financial reporting that showed no cause for concern.

## II.    Plaintiff fails to state a securities fraud claim against Denson and Schweller.

Plaintiff's FAC likewise falls well short of the high standard for pleading a securities fraud claim against Denson and Schweller. *See* D&S.MTD.16-17 (outlining essential elements). For each category of alleged misrepresentations, Plaintiff has failed to plead to the requisite FRCP or PSLRA standard one or more essential elements.

### A.    The FAC fails to plead fraud premised on the existence of the LPA.

Plaintiff does not dispute that most of the allegedly false statements could support a securities fraud claim only if the following three things are true: (1) the LPA is genuine; (2) the LPA has the legal effect Plaintiff claims (*i.e.*, it precluded Charge from withdrawing investments with KORR); and (3) Denson and Schweller knew the LPA existed and had such legal effect or were reckless with respect to the same.  In addition to the alleged omission of the LPA itself, Denson and Schweller's statements concerning "the nature of Charge's arrangements with KORR," Opp.19-20 (citing FAC¶¶143, 272), Charge's rights under the Informal Arrangement, *id.* at 20 (citing FAC¶280), the "material terms" of the Special Advisor Agreement, *id.* (citing FAC¶283), the characterization of assets in Charge's financial statements, *id.* at 21 (citing FAC¶¶247-49), and Charge's liquidity, *id.* at 20, 31-32 (citing FAC¶¶282, 292, 299, 314), all turn on the existence and effect of the LPA and Denson and Schweller's scienter with respect to it.

An inference of scienter—*i.e.*, knowledge of or recklessness with respect to the falsity of a misrepresentation or omission[2]—requires an inference that the statement is false or misleading. Even setting aside Charge's allegations in its litigation against Orr and the documents supporting them, *infra* § II.D., the facts alleged in Plaintiff's FAC make an inference of *forgery by Orr* far more plausible than an inference of fraud by Denson and Schweller.  *See* D&S.MTD.19. Plaintiff's own FAC sets forth Orr's checkered legal history, including the civil judgment entered against him for "participation in a kickback scheme involving the sale of fraudulent shares of stock," his conviction for conspiracy to commit money laundering arising from the same conduct, and SEC administrative proceedings leading "to the entry of an order **permanently barring** Orr from associating with a securities broker or dealer."  FAC¶101 n.3.  Moreover, if the LPA actually existed, Charge and KORR would have had no reason to enter into the Informal Arrangement and Special Advisor Agreement; by contrast, if the LPA were a forgery, those agreements would make sense.

Likewise, Plaintiff's fraud theory also requires that the LPA actually authorized Orr to withhold Charge's funds, which it could have done only if the LPA applied.  But the Special Advisor Agreement explicitly applies to Charge's investment of funds with KORR and contains a merger clause superseding all prior agreements on that subject.  *See* D&S.MTD.20.

Finally, even if the LPA existed, and even if it applied, the FAC's allegations do not provide the "strong circumstantial evidence of conscious misbehavior or recklessness" the PSLRA requires.  *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009); *see* D&S.MTD.20-23.

---

[2] Plaintiff concedes that he has not attempted to plead scienter through allegations of motive and opportunity, *see* Opp.41, so he must allege facts "constituting strong circumstantial evidence of conscious misbehavior or recklessness."  *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184-85 (2d Cir. 2014).

Because the FAC does not even *try* to link any Non-KORR Defendant (except the failed allegations against Scala, *infra* § III.B.1.) to the LPA itself, Plaintiff tries to leverage the benign "activity statements" to plug that hole.  Plaintiff dismissed Denson and Schweller's arguments on that point as "factual arguments" that cannot be resolved on a motion to dismiss.  Opp.23.  To support this assertion, he offers only a string citation to four non-PSLRA cases, *see* Opp.23-24 (citing *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) (antitrust claims); *Rosenfeld v. Lenich*, 370 F. Supp. 3d 335 (E.D.N.Y. 2019) (federal statutory non-securities and state-law tort claims); *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150 (2d Cir. 2006) (Telecommunications Act of 1996 claim); *Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) (Exchange Act § 16(b) claim)), and a single PSLRA case that he cites as an example of a court declining to take judicial notice of a document presented by defendants for the truth of the matter asserted, *see id.* (citing *City of Aus. Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 289 (S.D.N.Y. 2013)).

First, Plaintiff's suggestion that the Court cannot consider documents that he discussed and even quoted in his FAC and relied on in drafting it contravenes the governing Second Circuit authority.  A court may consider a document integral to the FAC in deciding a motion to dismiss. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 808 (2d Cir. 1996).  Likewise, to the extent Plaintiff argues he can rely on only the small portion of the activity statements that he can twist to support his theory, he is mistaken.  The Court may consider in their entirety documents integral to the FAC and that were relied on by Plaintiff in drafting it.  *San Leandro*, 75 F.3d at 808.  Here, the FAC discusses the Special Advisor Agreement at length and alleges that Charge failed to disclose its material terms.  *See, e.g.*, FAC¶¶150-52, 276, 277, 283.  And

the activity statements constitute the entire factual basis for Plaintiff's scienter allegations; in fact, the FAC screenshots part of one of those statements—the part Plaintiff wants the Court to see. *See* FAC ¶ 145.

Second, whether the Special Advisor Agreement or the LPA governed Charge's investments is a question of law, not fact. Courts routinely dismiss actions relying on prior oral or written promises based on the effect of a merger clause in a subsequent written contract, even where the PSLRA's heightened pleading standard does not apply. *See, e.g.*, *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 496 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003); *Osan Ltd. v. Accenture LLP*, 454 F. Supp. 2d 46, 55 n.9 (E.D.N.Y. 2006). Plaintiff offers no substantive response to Denson and Schweller's contention that the Special Advisor Agreement, not the purported LPA, governed the funds Charge placed with KORR, and that, consequently, the challenged statements were not false.

Third, under the PSLRA, Plaintiff bears the burden of pleading facts sufficient to support a "strong inference" that Defendants were reckless in failing to comprehend that the activity statements reflected an investment into a limited partnership, rather than investments in the countless purchases, sales, and positions in publicly-traded securities identified in those statements. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006). This inquiry focuses on the information known to Defendants when the representation was made. *See In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 44 (1st Cir. 2017) (recognizing allegations that "do not provide particularized insight into the defendants' knowledge at the time of the alleged misstatements" do not support inference of scienter). Plaintiff's focus on one fragment of information in isolation, while insisting all the other information known to Denson and Schweller (including information on those same activity statements) must be ignored, is

inconsistent with the PSLRA, which requires the Court to weigh the facts supporting an inference of scienter against the facts supporting an inference of nonfraudulent intent.

Finally, that the activity statements, read as a whole, could "be interpreted differently," *see* Opp.23, supports an inference of *non*fraudulent intent. So too does Denson and Schweller's knowledge that Charge and KORR had entered into a Special Advisor Agreement that, after one year, could be terminated by either party on 30 days' notice. Likewise, the absence of any other facts in the FAC supporting scienter with respect to the LPA is relevant to whether an inference of scienter is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 324.

Accordingly, Plaintiff fails to plead scienter for allegations of fraud that rely on the existence and effect of the LPA, and his claims relating to those challenged statements should be dismissed.

**B.    The FAC fails to plead fraud relating to Orr's divestment and the Side Letter.**

With respect to several alleged misrepresentations regarding Orr's divestment from Charge, including the Side Letter, Plaintiff does not dispute Denson and Schweller's argument that the alleged misrepresentations were not material. Specifically, Plaintiff does not even assert that any of the following facts were material (much less explain how): (1) Orr's children were beneficiaries of Gabriel 613 Trust; (2) Goldberg was the trustee of Gabriel 613 Trust; and (3) Gabriel also was a limited partner in KORR Value. Instead, Plaintiff's argument concerning materiality focuses on his contention that Orr "*controlled*" the Gabriel 613 Trust and the failure to disclose the (alleged) fact of Orr's control "gave regulators and investors the impression that Orr…was less involved with Charge than he actually was." Opp.26.

With respect to the Side Letter itself, Plaintiff has not plausibly pleaded that any omission of its existence was material. Plaintiff asserts that "the Side Letter materially altered the consideration Charge gave to Arena in exchange for $20 million of financing." Opp.28. But Charge was not a party to the Side Letter, and it "gave" Arena nothing pursuant to that letter.

As for the remaining alleged misrepresentations—Orr's alleged agreement to cover Fox's obligations under the Side Letter, Charge's supposed promise to pay KORR Value the value of 4.5 million shares, and Orr's control of Gabriel 613 Trust—Plaintiff's allegation of scienter as to Denson and Schweller is conclusory and thus insufficient to satisfy Rule 8(a), much less the PSLRA's heightened pleading standard. *See* D&S.MTD.24-25. Plaintiff's response to this argument is to repeat the FAC's conclusory allegations without any further support or elaboration. Opp.27 ("Denson [and] Schweller…knew about the Side Letter and Orr's agreement to cover Fox's commitment."). Thus, alleged misstatements relating to Orr's divestment from Charge or the Side Letter cannot support a securities fraud claim.[3]

### C.    The FAC fails to plead fraud relating to Charge's financial condition.

Plaintiff's allegations that Denson and Schweller omitted Orr's noncompliance with drawdown schedules, and allegations relating to statements about Charge's liquidity during the same period, also cannot support his securities fraud claim because the omission of Orr's noncompliance with the drawdown schedules was not material. Plaintiff's assertion that Denson and Schweller "were aware *for months* that Orr was refusing to return the Company's funds," Opp.31, mischaracterizes the pleaded facts. While the FAC alleges that the drawdown schedules evolved over time, Orr did not "refuse" to return those funds until November 14, 2023. FAC¶210. That Denson and Schweller failed to anticipate ahead of time that Orr would—a week before payment on the Arena notes was due—produce for the first time a supposed

---

[3] Because Plaintiff's scheme liability claim relies entirely on the Side Letter, *see* FAC¶¶400-10, that claim also fails.

agreement purporting to absolve him of any obligation to return Charge's funds does not amount to securities fraud. *Novak*, 216 F.3d at 309.

> ### D.    The FAC fails to plead fraud relating to discussions with Arena.

Plaintiff also has failed to plead facts establishing that Denson and Schweller's failure to disclose information about ongoing discussions with Arena relating to potential refinancing of Charge's debt was material. In arguing that the "issues with Arena" were material, Plaintiff relies primarily on two cases where a company failed to disclose discussions regarding a fundamental transaction (e.g., a sale or merger).[4] In *In re National Instruments Corporation Securities Litigation*, 2024 WL 4108011, at *1 (S.D.N.Y. Sep. 6, 2024), the defendant corporation received an offer to buy the company that it did not disclose to shareholders, yet continued buying back stock at a price below the per-share price the prospective buyer offered. And in *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 176 (2d Cir. 2001), the defendant corporation had unsuccessful merger negotiations with another entity, after which it continued to explore a potential sale until securing a leveraged buyout later that year.

The contrast between the negotiations in those cases—which concerned nondisclosure of fundamental terms of or developments with potential mergers or acquisitions—and this case could not be starker. First, this case involves discussions with a senior lender over refinancing existing debt rather than a fundamental transaction. Second, Plaintiff has not alleged that Charge would have been unable to meet its obligations to Arena had Orr returned Charge's funds as the Special Advisor Agreement obligated him to do. Thus, up until Orr refused to return the funds,

---

[4] Plaintiff cites two other cases in this section of the Opposition that provide no support for his claim that Charge was required to disclose its ongoing discussions with Arena. *Meyer v. Concordia Int'l Corp.*, 2017 WL 4083603, at *4-6 (S.D.N.Y. July 28, 2017), involved omissions about actual reductions in a pharmaceutical company's salesforce and formulary exclusions by insurers. And *Puddu v. 6D Global Techs., Inc.*, 2021 WL 1198566, at *6 (S.D.N.Y. Mar. 30, 2021), concerned a defendant's failure to disclose his acquisition of an interest in a company in excess of 5%.

Charge's "issues" with Arena were not of the sort of "magnitude"[5] that would "result[] in Charge filing for bankruptcy."  Opp.36.  Third, Plaintiff does not dispute that Charge had no obligation to disclose litigation it was merely considering filing and offers no support for his apparent position that Charge should have counterproductively aired out its grievances with Arena by stating "that Arena was thwarting Charge's efforts to obtain new financing to pay the notes." FAC¶ 254.  Fourth, Plaintiff has no comeback to the fact that Charge *did* disclose potential litigation with Arena in its Q2 2023 10-Q, and he alleges nothing indicating that before that disclosure, Charge's "dispute[s]" with Arena were not of the sort that occur "in the ordinary course of business" and "would likely be resolved on favorable terms."  Opp.37.  And fifth, Plaintiff relies mostly on facts learned through events that transpired after the alleged omissions occurred to establish materiality.  Materiality, however, must be evaluated based "upon all the facts as of the time of the transaction and not upon a 20-20 hindsight view long after the event." *In re Union Carbide Class Action Sec. Litig.*, 648 F. Supp. 1322, 1327 (S.D.N.Y. 1986).

Accordingly, Denson and Schweller's alleged failure to inform shareholders that Arena was "thwarting" its efforts to obtain financing cannot support a securities fraud claim.

### E.    The FAC fails to plead fraud relating to SOX certifications and related statements.

Plaintiff fails to respond to Denson and Schweller's arguments why the securities fraud claims relating to SOX Certifications must be dismissed.  D&S.MTD.27-29.  Denson and Schweller criticized Plaintiff's conclusory allegations of inadequate internal controls and failures

---

[5] Plaintiff appears to suggest the mere fact of Charge's ultimate bankruptcy somehow retroactively creates scienter with respect to the alleged Arena omissions, Opp. 36-37, but neither case he cites remotely supports that theory. *See San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 318 (S.D.N.Y. 2024) (scienter when accounting restatement coupled with alleged fraud inflating defendants' "earnings by several million dollars" and "Defendants had actual knowledge of information contradicting their statements"); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 38 (S.D.N.Y. 2019) (same when up to $70 million inventory drawdown coupled with defendants' "ignoring those spiraling inventory levels in one of their key markets").

to follow internal controls without any details, *see* D&S.MTD.28 (citing *LaPietra v. RREEF Am. L.L.C.*, 738 F. Supp. 2d 432, 433 (S.D.N.Y. 2010); *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 371 (E.D.N.Y. 2013)), and failure to plead any facts supporting an inference of knowledge, *see* Fox.MTD.20-21 (citing *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 358 (S.D.N.Y. 2015)).  Plaintiff's Opposition simply repeats, without defending, the same conclusory FAC allegations that Denson and Schweller identified as insufficient.  *See* Opp.37-39.

Plaintiff's claim also warrants dismissal to the extent it relies on statements by Denson and Schweller relating to financial reporting (specifically, Schweller's statement that her "immediate focus will be ensuring resilience in accounting and robust internal controls over financial reporting," and Fox's statement that he had a "zero tolerance policy" if "somebody tries to cover something up").  Plaintiff argues that these statements are not puffery because they misrepresented existing fact.  Opp.38-39 (citing *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 198 (S.D.N.Y. 2010)) (involving, unlike here, statements "den[ying] that [a company's] real estate loan portfolio had become more risky" and "concern[ing] specific 'credit characteristics' that were "misrepresented").  But Plaintiff does not explain what "existing facts" these statements supposedly misrepresent.  Nor does Plaintiff dispute that no reasonable investor would rely on the generalized statements Denson and Schweller made—the defining characteristic of puffery.  *See ECA*, 553 F.3d at 206.

Finally, Plaintiff's throwaway argument that allegations about false SOX certifications "bolster[] the inference of scienter," Opp.39, is meritless.  A PSLRA scienter inference must be based on the well-pleaded facts set forth in the FAC, not conclusory allegations that Denson and Schweller made false SOX certifications.  *See In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 290 (D.N.J. 2007) (cited at Opp.38) (collecting cases holding that "without aggravating

circumstances of actual knowledge about the misrepresentation, a SOX certification gives no inference of scienter").

## III.    Plaintiff cannot rehabilitate his claims against the Director Defendants.

### A.    Plaintiff still lacks a cognizable falsity allegation for the Director Defendants.

Given space constraints, the Director Defendants focus their reply on the dispositive scienter defects. *Infra* § III.B. But with respect to falsity, suffice it to say that the Opposition only substantiates the fatal shortcomings that the Director Defendants' MTD identified, including by:

- Repeatedly declaring things "material omission[s]," *e.g.*, Opp.31, 32, 34, & 35, without articulating how any such purported omission made what the Director Defendants *actually said* affirmatively misleading under *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024).

- Refusing to temporally link supposedly contrary facts to statements *then made* by the Director Defendants. *E.g.*, Opp.12-13 (citing 11/1/2023 email as purported evidence of what the "Director Defendants did not disclose," ignoring that the Director Defendants made no statements after 8/15/2023, much less after the 11/1/2023 email).

- Declaring that Charge "fail[ed] to disclose *any* of [the] material terms" of the Special Advisor Agreement, Opp.20, despite the Court's being able to see that agreement— and Charge's accurate description of it—for itself. DD.MTD Exs.4, 10.

- Ignoring caselaw rejecting the FAC's omission theories based on Charge's potential litigation against Arena and receipt of shareholder letters, DD.MTD.19-21, and tellingly citing only a decision involving—unlike here—a duty "to disclose to sellers *all material information*," *Castellano*, 257 F.3d at 179 (emphasis added).

- Mischaracterizing Charge's Q2 2023 10-Q as describing the Arena dispute as an "ordinary course of business" non-event, Opp.37, when the disclosure's plain text referenced potential "litigation," active efforts to refinance, and that Charge would "take appropriate action to preserve the Company's rights," DD.MTD. Ex. 5.

For these reasons and others contained in this reply and the Non-KORR Defendants' MTDs, the FAC's failure to plead falsity necessitates dismissal.

**B.      Plaintiff's allegations still fall well short of creating a strong inference of scienter as to the Director Defendants.**

**1.      The Opposition enhances the flaws in the FAC's Scala/KORR LPA allegation.**

The problem with the FAC's allegation that Scala (but not other Director Defendant) was aware of and caused Charge to enter the LPA, FAC¶65, was not that it came from a "broadly self-inculpatory confession" that also contained "a defendant's self-serving statements," as in Plaintiff's inapposite cases.  Opp.24-25 (citing, *e.g.*, *Williamson v. United States*, 512 U.S. 594, 599-600 (1994)).  The problem, rather, was that the PSLRA demands a *source* for every factual allegation, 15 U.S.C. §78u-4(b)(1)(B), and the FAC deliberately concealed that its Scala/KORR LPA allegation came from Charge's New York lawsuit conclusively demonstrating the LPA was a sham.  DD.MTD.24-26.

In its scramble to concoct a source, the Opposition ironically (and belatedly[6]) points to *Orr's own affidavit* in the Charge lawsuit, despite elsewhere besmirching Orr as a "convicted fraudster" and wondering aloud "who, if anyone, committed fraud by forging a document." Opp.1, 4, 24 & Ex.A.  Courts in this district have applied "close scrutiny" to securities-fraud allegations based on such patently self-interested sources of "dubious reliability," asking whether "independent factual allegations corroborated the factual allegation in the complaint drawn from" such sources.  *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020) (summarizing caselaw involving reliance on short-seller reports).  Orr's self-serving affidavit withers under that scrutiny, self-defeatingly claiming the LPA—with its undisputedly cut-and-paste Scala signature—is a "scan" of the supposed *original* but still-never-produced "*hard copy* of the LPA" that purportedly has existed "in [Orr's] files since the date it was executed in 2020."

---

[6] *See K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.").

Opp. Ex.A¶7 (emphasis added).    The Opposition never tries to defend that nonsensical explanation, let alone offer corroborating factual allegations.

In any event, Plaintiffs' apparent contention (at 23-24) that this Court is bound by the FAC's factual allegations—no matter how implausible—ignores that while courts "normally draw reasonable inferences in the non-movant's favor on a motion to dismiss, the PSLRA establishes a more stringent rule for inferences involving scienter because the PSLRA requires particular allegations giving rise to a strong inference of scienter." *ECA*, 553 F.3d at 196.  So even if the Court considered the dubious Orr affidavit and the inference that Scala executed the LPA—that is, that Scala knowingly invested money into a doomed enterprise—it would pale in comparison to the more compelling nonculpable inferences. *Infra* § III.B.3; DD.MTD.24-28.

### 2.    Plaintiff cannot manufacture scienter by pleading the complete absence of facts connected to the Director Defendants.

Because the FAC cannot connect the Director Defendants to any red flag contemporaneously contradicting anything they said, DD.MTD.17-21, the Opposition attempts to manufacture scienter several ways.  But each effort fails.

*First*, Plaintiff plays fast and loose with his own allegations, repeatedly embellishing—or simply inventing—allegations against the Director Defendants found nowhere in the FAC:

| Opposition's Embellishment | FAC (emphasis added) |
|---|---|
| "[T]he Director Defendants knew about the Side Letter and Orr's agreement to cover Fox's commitment." Opp.27 (citing FAC¶¶90, 320, 335); Opp.8 (similar) (citing FAC¶¶ 90, 407). | ¶90: Alleging "*Charge and Arena* were fully aware of the Side Letter." <br><br> ¶320: Alleging "the *Management Defendants*" knew about the Side Letter. <br><br> ¶335: Boilerplate allegation that Director Defendants "had access to the information" because of their positions. <br><br> ¶407: Alleging "[t]he *Scheme Defendants* intentionally concealed the Side Letter." |
| "Director Defendants…knew by December 2022 that Charge was having liquidity issues…." Opp.23 (citing FAC¶¶161, 202). | ¶161: Alleging "*Fox, Schweller, and Denson* were aware" of Charge's return-of-capital discussions with Orr. <br><br> ¶202: Alleging that "likely by the *summer of 2023*, but *at the very latest on November 3, 2023*,…Director Defendants knew that the Company was facing serious liquidity problems." |
| "The Director Defendants also met to consider refinancing negotiations occurring with Arena between May 2023 and November 2023, refusing to approve a recommended payoff." Opp.36 (citing FAC¶333). | ¶333: Alleging "the Director Defendants were also fully aware"—at an unspecified point— "of the refinancing negotiations with Amped I which were ongoing between May 2023 and November 2023 as the payoff *ultimately decided upon* required Board approval." |

The Court should reject these and other attempts by "Plaintiff [to] misrepresent[] his own allegations." *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 404 (S.D.N.Y. 2022) (Furman, J.).

*Second*, the Opposition tries to weaponize the FAC's *failure* to link the Director Defendants to any contemporaneous red flags, declaring they must have been "reckless in *not knowing*" certain purported facts. *E.g.*, Opp.22, 27, 30 (emphasis added). But "conclusory allegations that a defendant knew or [was] reckless in not knowing the true facts will not satisfy a plaintiff's pleading requirements" under the PSLRA. *In re Bayou Hedge Fund Litig.*, 534 F.

Supp. 2d 405, 415 (S.D.N.Y. 2007), *aff'd*, 573 F.3d 98 (2d Cir. 2009). And allegations that the Director Defendants "merely ought to have known" or "should have done more to attempt to uncover and disclose the alleged fraud"—"without factual allegations tending to establish *knowledge of those practices*"—do "not rise above the level of negligence, which is legally insufficient." *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 129 (S.D.N.Y. 2013) (emphasis added). The Opposition only proves that point, citing cases involving—unlike here—"willful blindness" in the face of *known evidence* of fraud.[7]

*Third*, the Opposition recycles the boilerplate theories that the Director Defendants "due to their positions…had access to information contradicting their statements," and that mere service by the subset on the Audit Committee must mean they acted with scienter. Opp.29, 42. Yet, the Opposition (a) does not even *try* to confront Defendants' cases rejecting those defunct theories or the impermissible "group pleading" approach to demonstrating scienter, (b) never explains how the Charge account statements referencing KORR Value LP could be a red flag in any event, given KORR Value LP's *publicly disclosed* association with KORR Acquisitions Group, Inc., the entity providing investment advisory services, DD.MTD.24, and (c) cites exclusively to cases (many out-of-Circuit) reiterating that the Director Defendants' status and

---

[7] Opp.23, 29 (citing *S.A. Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 322 (S.D.N.Y. 2024) (scienter when CEO and CFO either "knew about the product defects," "orchestrated or knew about and approved the [channel stuffing] incentive plan," or "set unrealistic sales targets, applied pressure, suppressed dissent, and then watched as sales remained steady but distributor inventory rose"); *Institutional Inv.'s Grp. v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009) (scienter when executive "might be culpable as long as *what he knew* made obvious the risk that his confident, unhedged denials of unusual discounting would mislead investors") (emphasis added); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 136 (S.D.N.Y. 2020) (scienter when CEO sold stock and "it [wa]s virtually inconceivable that the CEO and Co-Presidents of WWE would not have been aware of the formal termination by WWE of this important contract"); *In re Nielsen Holdings PLC Sec. Lit.*, 510 F. Supp. 3d 217, 237 (S.D.N.Y. 2021) (scienter when Nielsen publicly stated that data protection regulations would have no impact on its business operations despite having cancelled 120 data collection campaigns six days earlier)).

access alone is insufficient[8] and involving readily distinguishable allegations directly evincing defendants' knowledge of the alleged fraud.[9]  None of that moves the scienter needle.

### 3.    Plaintiff cannot salvage his motive-less, nonsensical theory of fraud.

The Opposition ties itself in knots trying to explain *why* the Director Defendants would not sell a single share of stock—and, instead, would continue investing their own money—in a company they purportedly knew had an "inflated" stock price and hidden problems.  Opp.26. Despite conceding a lack of motive, Opp.41, Plaintiff insists the Director Defendants were somehow incentivized to conceal bad news on the blind "hope[]" that "KORR would return the funds and fix the problems" (despite purportedly knowing it had no obligation to do so), Opp.43. That makes neither factual nor legal sense.  Unlike in cases like *Sjunde AP-Fonden v. General Electric*—which, as this Court knows, involved lucrative "executive bonuses" and thus concrete "benefits of concealment," 2023 WL 6314939, at *11 (S.D.N.Y. Sep. 28, 2023) (Furman, J.)— the FAC never alleges the Director Defendants stood to gain *anything* from the supposed fraud,

---

[8] Opp.29-30, 42 (citing, *e.g.*, *In re Aphria, Inc. Sec. Litig.*, 2020 WL 5819548, at *9 (S.D.N.Y. Sep. 30, 2020) ("Plaintiff must do more than allege that the [individual defendants] had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions, to establish scienter."); *Brown v. China Integrated Energy, Inc.*, 2013 WL 12124124, at *7 (C.D. Cal. Apr. 22, 2013) ("General allegations concerning an outside director's position in a company and/or his committee memberships are insufficient, on their own, to give rise to a strong inference of scienter.")).

[9] Opp.34, 36, 40-42 (citing, *e.g.*, *Wang v. Cloopen Group Holding Ltd.*, 661 F. Supp. 3d 208, 234-35 (S.D.N.Y. 2023) (scienter when executives were involved in subject transactions and it was "difficult to believe" that they "never contemplated the scale of the loss resulting" therefrom); *In re Toronto-Dominion Bank Sec. Litig.*, 2018 WL 6381882, at *13-16 (D.N.J. Dec. 6, 2018) (scienter when "Individual Defendants either knew or the improprieties were so obvious that they must have been aware" and engaged in "stock sales…[that] may support a strong inference of scienter"); *Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 561 (D.N.J. 2024) (scienter when executives "had been provided with detailed information that directly suggested precisely the opposite" of what they said); *Freudenberg*, 712 F. Supp. 2d at 189 (scienter when 16 confidential witnesses provided detailed "accounts of what they told Defendants, what Defendants knew, and/or what was discussed internally" that was "contrary to Class Period statements"); *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 545 F. Supp. 3d 120, 143-44 (S.D.N.Y. 2021) (scienter when Plaintiff included detailed allegations that defendants "personally approved all three" fraudulent transactions that had "blatant" "red flags of potential corruption or criminality"); *In re Coinbase Glob., Inc. Sec. Litig.*, 2025 WL 2779024, at *11-19 (D.N.J. Sep. 30, 2025) (scienter when, among other things, "Defendants submitted the SEC Comment Letter demonstrating Defendants' understanding that the commingling of customers' assets could lead to adverse consequences in the event of a bankruptcy" and "s[old] over 1.6 million shares and nett[ed] gross proceeds over $600 million")).

apart from the classically deficient "short respite from an inevitable day of reckoning," *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994).

From there, the Opposition peddles in frivolous conspiracy theories, speculating that because certain Director Defendants "purchased shares at or around the same time," they must have been trying to "influence the market" (*i.e.*, inflating the very stock they *continued to purchase*) or, even more bizarrely, to "rebut a scienter inference" (for securities-fraud claims that did not—and would not—exist until years later).  Opp.41-42.  Naturally, Plaintiff has no authority—much less factual allegations—supporting these absurd theories.  *See In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 320 (S.D.N.Y. 2013) (cited at Opp.41) (recognizing that "under some circumstances such purchases might suggest a *lack* of fraudulent intent" and finding scienter based only on officers' exposure to contrary facts) (emphasis added)).

At bottom, Plaintiff asks the Court to subject these independent Director Defendants— who were themselves injured by the purported scheme—to securities-fraud claims on the barest of factual allegations.  Plaintiff's own authority recognizes that under such circumstances, the "most likely" nonculpable inference is that the Director Defendants were "simply ignorant of the facts that [purportedly] made their statements false."  *Avaya*, 564 F.3d at 270.  Plaintiff cannot identify a single case allowing claims like these to survive against independent directors under remotely similar circumstances.  This case should not be the first.

## IV.    The Section 20(a) claims remain deficient.

Plaintiff does not dispute that a viable Section 20(a) claim requires "a primary violation." Opp.50.  Because the primary Section 10(b) claims against the Non-KORR Defendants fail, *supra* §§ I-III, so do the Section 20(a) claims.

**V.    Plaintiff fails to state a claim for common law fraud.**

In addition to sharing all the shortcomings of his securities fraud claims, Plaintiff's claim for common law fraud fails because his conclusory allegation of reliance does not satisfy Rule 9(b).   Plaintiff's attempt to conflate the elements of common law fraud and securities fraud runs aground on the fact that the fraud-on-the-market theory, which he invokes to plead reliance for his securities fraud claim, *see* FAC¶377 (citing *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)), does not apply to actions for common law fraud.

CONCLUSION

The Court should dismiss the FAC's claims against the Non-KORR Defendants with prejudice.

Dated:  December 11, 2025

Respectfully submitted,

**MARION & ALLEN, P.C.**

By: */s/ Roger K. Marion*
      Roger K. Marion
      488 Madison Avenue, Suite 1120
      New York, NY 10022
      rmarion@rogermarion.com
      Tel.: (212) 658-0350
      Fax: (212) 308-8582

**STEVENS & LEE, P.C.**

By: */s/ David M. Stewart*
      David M. Stewart
      669 River Drive, Suite 201
      Elmwood Park, NJ 07407
      david.stewart@stevenslee.com
      Tel.: (201) 857-6773
      Fax: (610) 371-7363

By: */s/ Ryan L. O'Neill*
      Ryan L. O'Neill (admitted *pro hac vice*)
      669 River Drive, Suite 201
      Elmwood Park, NJ 07407
      ryan.oneill@stevenslee.com
      Tel.: (201) 857-6769
      Fax: (610) 236-4909

*Counsel for Defendant Andrew Fox*

**McCARTER & ENGLISH, LLP**

By: */s/ Gregory J. Hindy*
      Gregory J. Hindy
      250 West 55th Street, 13th Floor
      New York, NY 10019
      (212) 609-6800
      ghindy@mccarter.com

*Counsel for Defendants Craig Denson and Leah Schweller*

**BAKER BOTTS L.L.P.**

By: /s/ *Amy Pharr Hefley*
    Amy Pharr Hefley
    S.D.N.Y. Bar No. 6140370
    Anthony J. Lucisano (admitted *pro hac vice*)
    Texas Bar No. 24102118
    910 Louisiana Street
    Houston, Texas 77002-4995
    Tel.: (713) 229-1270
    Fax: (713) 229-2770
    amy.hefley@bakerbotts.com
    anthony.lucisano@bakerbotts.com

    Benjamin C. Hunt (admitted *pro hac vice*)
    Texas Bar No. 24136903
    401 South 1st Street, Suite 1300
    Austin, Texas 78704
    Tel.: (512) 322-2500
    Fax: (512) 322-8363
    ben.hunt@bakerbotts.com

*Counsel for Defendants Philip P. Scala, James Murphy, Benjamin Carson, Jr., Baron Davis, and Justin Deutsch*

**DINSMORE & STOHL LLP**

By: /s/ *Harold T. Schisler, II*
    Javier F. Flores
    101 Arch Street
    Suite 1800
    Boston, MA 02110
    Tel.: (857) 305-4600
    javier.flores@dinsmore.com

    Harold T. Schisler, II (*pro hac vice*)
    255 E. Fifth Street, Suite 1900
    Cincinnati, Ohio 45202
    Tel.: (513) 977-8200
    Fax: (513) 977-8141
    toby.schisler@dinsmore.com

*Counsel for Defendants Chantel E. Lenard, Gary Jacobs, Amy Hanson, and Jacky Wu*

24

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing reply complies with this Court's September 26, 2025 Order (Dkt. 175) granting an extension of word count for the Non-KORR Defendants' Joint Reply because it contains 6,973 words, excluding the portions of the reply excluded by Local Civil Rule 7.1(c).

/s/ *Anthony J. Lucisano*
Anthony J. Lucisano