**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DAVID FINKELSTEIN, Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> ANDREW FOX, LEAH SCHWELLER, CRAIG DENSON, PHILLIP P. SCALA, JUSTIN DEUTSCH, JAMES MURPHY, BARON DAVIS, BENJAMIN CARSON, JR., CHANTEL E. LENARD, GARY JACOBS, AMY HANSON, JACKY WU, KENNETH ORR, KORR ACQUISITIONS GROUP, INC., KORR VALUE, L.P., ARENA INVESTORS, LP, AI AMPED I, LLC, AI AMPED II, LLC, MT. WHITNEY SECURITIES, LLC, ARENA ORIGINATION CO., LLC, ARENA FINANCE MARKETS, LP, ARENA SPECIAL OPPORTUNITIES FUND, LP, ARENA SPECIAL OPPORTUNITIES PARTNERS, I, LP, ARENA STRUCTURED PRIVATE INVESTMENTS LLC, and ARENA INVESTORS GP, LLC, <br><br> *Defendants*. | No. 1:24-cv-04056 (JMF) <br><br> <u>CLASS ACTION</u> |

**ARENA DEFENDANTS' MOTION**
**FOR ATTORNEYS' FEES AND RELATED NONTAXABLE**
**EXPENSES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE**
<u>54(d)(2), 15 U.S.C. § 78u-4(c), AND FEDERAL RULE OF CIVIL PROCEDURE 11</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................1

BACKGROUND ..................................................................................................................3

LEGAL STANDARD...........................................................................................................5

ARGUMENT.......................................................................................................................6

A.    Plaintiffs' Claims Against Arena Were Objectively Unreasonable............................................6

B.    The Rule 11 Violation Was Substantial and Supports a Fee Award..........................................9

C.    The Court Should Consider Arena's Motion Now or Deem It Timely Preserved....................11

CONCLUSION...................................................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*,
No. 1:17-cv-1235-GHW, 2018 U.S. Dist. LEXIS 54594 (S.D.N.Y. Mar. 30,
2018) ..................................................................................................................7

*In re AOL, Inc. Repurchase Offer Litig.*,
No. 12 Civ. 3497 (DLC), 2013 WL 6331802 (S.D.N.Y. Dec. 5, 2013) .............................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
579 F.3d 143 (2d Cir. 2009)....................................................................... 2, 6, 10

*In re Australia & New Zealand Banking Group Ltd. Securities Litigation*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010)...................................................................10

*Gurary v. Nu-Tech Bio-Med, Inc.*,
303 F.3d 212 (2d Cir. 2002).......................................................................... 2, 10

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)...........................................................................................7

*Lentell v. Merrill Lynch Co. Inc.*,
396 F.3d 161 (2d Cir. 2005)..................................................................................7

*Lorenzo v. Sec. & Exch. Comm'n*,
587 U.S. 71 (2019)..............................................................................................2

*Schnell v. Conseco, Inc.*,
43 F. Supp. 2d 438 (S.D.N.Y. 1999)........................................................................7

*Sec. & Exch. Comm'n v. Rio Tinto plc*,
41 F.4th 47 (2d Cir. 2022) ..................................................................................2

**STATUTES AND RULES**

15 U.S.C. § 78u-4(c) ................................................................1, 2, 5, 10, 11

Fed. R. Civ. P. 9(b) ..........................................................................................9

17 C.F.R. § 240.10(b)-5 ..................................................................................2, 7

Fed. R. Civ. P. 11 ......................................................................................*passim*

Fed. R. Civ. P. 54(d)(2)............................................................................ 1, 6, 11

Defendants Arena Investors, LP; AI Amped I, LLC; AI Amped II, LLC; Mt. Whitney Securities, LLC; Arena Origination Co., LLC; Arena Finance Markets, LP; Arena Special Opportunities Fund, LP; Arena Special Opportunities Partners, I, LP; Arena Structured Private Investments LLC; and Arena Investors GP, LLC (collectively, the "Arena Defendants" or "Arena") respectfully move for attorneys' fees and related nontaxable expenses pursuant to Federal Rule of Civil Procedure 54(d)(2), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(c), and Federal Rule of Civil Procedure 11.

**PRELIMINARY STATEMENT**

Arena files this motion in response to the Rule 54(d)(2) deadline arising from entry of the Court's June 23, 2026 Opinion and Order, ECF No. 194 (the "Opinion"), which dismissed all claims against the Arena Defendants in full, denied leave to amend as futile, and directed the Clerk to terminate Arena from the case.  Arena now moves, pursuant to 15 U.S.C. § 78u-4(c) and Federal Rule of Civil Procedure 11, for an award of its reasonable attorneys' fees and related nontaxable expenses, estimated at $698,904.36, subject to supplementation.  *See* Declaration of Laura J. Garr in Support of Arena Defendants' Motion for Attorneys' Fees and Related Nontaxable Expenses, dated July 7, 2026 ("Garr Decl.") ¶ 3.

The operative pleading, Plaintiffs' Fourth Amended Complaint (the "FAC"), ECF No. 119, named ten Arena entities as defendants in this federal securities fraud class action and subjected them to the full burden of complex, multi-year securities litigation, including hundreds of thousands of dollars in attorneys' fees and costs seeking to dismiss two separate baseless complaints against Arena.  Plaintiffs' decision to name the Arena entities as defendants rather than potential class members had the apparent purpose of excluding Arena from the very class recovery Plaintiffs purported to pursue on behalf of injured Charge investors.  Now that Arena has been fully vindicated, it is entitled to recovery as a shareholder as well.

Despite naming Arena as defendants in three different versions of the Complaint, Plaintiffs never alleged that Arena made any actionable public statement, had ultimate authority over Charge's public disclosures, owed investors an independent disclosure duty, or engaged in any deceptive conduct. The only Arena-specific factual allegation in the FAC was that Arena, "[u]pon information and belief," "participated in the decision to omit the disclosure of the Side Letter" and was "aware that the Side Letter and its terms were hidden from the public"—a single conclusory assertion made upon information and belief. FAC ¶¶ 91,174. That allegation, on its own and as a matter of controlling law, cannot sustain a claim for scheme liability under Rule 10b-5. *See Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022) (holding that an actionable scheme-liability claim under Rule 10b-5(a) and (c) requires deceptive conduct beyond a misstatement or omission); *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 79 (2019). In this case, the Court held the scheme-liability claims against Arena "easily dismissed" because scheme liability "requires something beyond misstatements and omissions," and Plaintiffs failed to identify any deceptive conduct by Arena independent of the alleged nondisclosure. Opinion at 18–19.

The PSLRA requires the Court, upon final adjudication of any private Exchange Act action, to make specific findings as to each party's and counsel's compliance with Rule 11(b), and mandates sanctions if a violation is found. *See* 15 U.S.C. § 78u-4(c)(1)–(2). Where the complaint substantially fails to comply with Rule 11(b), the presumptive sanction is an award of reasonable attorneys' fees and other expenses. *See* 15 U.S.C. § 78u-4(c)(3)(A)(ii); *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 215 (2d Cir. 2002). The claims asserted against Arena, legally foreclosed on their face and supported by a single conclusory allegation, represent precisely the kind of substantial Rule 11 failure the PSLRA was designed to address. *See ATSI Commc'ns, Inc. v. Shaar*

2

*Fund, Ltd.*, 579 F.3d 143, 155 (2d Cir. 2009) (noting Congress enacted the PSLRA to "reduce significantly the filing of meritless securities lawsuits without hindering the ability of victims of fraud to pursue legitimate claims" and to put "teeth in Rule 11") (internal citation omitted).

## BACKGROUND

Arena entities were added for the first time as defendants to this action when Plaintiffs filed the second amended complaint on January 17, 2025, which they amended before Arena moved to dismiss. Arena filed a motion to dismiss the third amended complaint on April 14, 2025. Before Arena's motion was fully briefed and before Plaintiffs filed any opposition, Plaintiffs amended the complaint, mooting Arena's motion. Plaintiffs filed the FAC on May 19, 2025. Arena thereafter moved to dismiss the FAC on June 23, 2025.

**Arena's Role as Pleaded.** The FAC alleges that Arena held 9.99% of Charge's outstanding common stock, with contractual ability to increase that position upon 61 days' notice, and that Arena served as a secured lender to Charge. FAC ¶ 56. During the entire class period, Arena publicly disclosed that it was the beneficial owner of 9.99% of Charge's outstanding common stock and held additional securities convertible into a further approximately 10% of common stock upon 61 days' notice, meaning Arena's outright beneficial ownership of common stock did not exceed 9.99%. FAC ¶¶ 56, 176. Arena was not a Charge officer, director, or executive. Arena did not draft, sign, review, or submit any of Charge's public filings. The FAC does not allege any involvement by Arena in preparing or making any of the statements it identifies as misleading; the FAC's own Table 3, cataloging every alleged misstatement by date and signatory, attributes those filings to Charge's management and officer defendants—not to any Arena entity. FAC at 61-63, Table 3; Memorandum of Law in Support of Arena Defendants' Motion to Dismiss the Fourth Amended Complaint ("MTD Br.") at 10, ECF No. 126. The FAC likewise does not allege that Arena owed any independent disclosure duty to Charge's public

3

shareholders.

Notably, Arena was itself a victim of Charge's management failures. The FAC alleges that Arena, as both a lender and minority shareholder, was itself exposed to Charge's financial misconduct. FAC ¶ 21. The Court noted that Arena subsequently brought its own lawsuit against several of Charge's former officers and directors alleging fraud, negligent misrepresentation, and breach of fiduciary duties. Opinion at 13 n.4.

**The FAC's Single Operative Allegation Against Arena.** The FAC's only Arena-specific factual allegation was that Arena, upon information and belief, "participated in the decision to omit the disclosure of the Side Letter"[1] and, at minimum, knew the SPA-related disclosures were materially misleading because they omitted the Side Letter. FAC ¶ 91. The FAC's Scheme Liability count grouped Arena among the "Scheme Defendants" and characterized the alleged scheme as a collective decision by Arena and the Management Defendants "not to disclose" the Side Letter in Charge's public filings. FAC ¶¶ 401–04. The FAC did not allege that Arena drafted or authorized any Charge public statement. It did not allege that Arena had contractual or legal authority to direct Charge's SEC disclosures. It did not allege that Arena owed an independent duty of disclosure to Charge's public shareholders. And it did not identify any affirmative deceptive act by any Arena entity separate from the alleged nondisclosure. Arena's motion to dismiss identified these deficiencies in detail, demonstrating that the FAC's theory rested entirely on Charge's own public statements and that Arena's alleged "participation" in an omission cannot, as a matter of law, satisfy the independent-deceptive-conduct requirement of scheme liability. MTD Br. at 10, 13–15.

---

[1] The Side Letter was a separate agreement entered contemporaneously with Charge's December 2021 Stock Purchase Agreement with Arena, under which Fox and KORR Value agreed to transfer 9,000,000 shares of Charge common stock to two Arena entities for $2.0 million. FAC ¶¶ 19, 82.

4

**Plaintiffs' Post Hoc "Consent and Approval" Theory.**    Rather than defend the allegations actually in the FAC, Plaintiffs introduced an entirely new (unsupported) theory in opposition: that the SPA required Charge to issue a press release with Arena's "explicit consent and approval," and that Arena therefore had the power to compel disclosure of the Side Letter. Opp. at 13.  The Reply demonstrated that this "consent and approval" theory appeared nowhere in the FAC and consisted of new allegations improperly introduced for the first time in opposition briefing—allegations that, even if cognizable, merely characterized Arena's alleged knowledge of and acquiescence in an omission and thus still did not satisfy the independent-deceptive-conduct requirement of scheme liability.  Reply at 4–5, ECF No. 173 ("Reply").  The Court rejected the theory on both grounds: Plaintiffs cannot amend a complaint through opposition briefing, and, in any event, the theory was "just another way of characterizing the decision to omit the relevant information from public filings" and therefore could not sustain a scheme-liability claim.  Opinion at 19 n.7.

## LEGAL STANDARD

In any private action arising under the Securities Exchange Act of 1934 (the "Exchange Act"), upon final adjudication of the action, the Court must include in the record "specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)" as to any complaint, responsive pleading, or dispositive motion.  15 U.S.C. § 78u-4(c)(1).  If the Court finds a violation of Rule 11(b), sanctions are mandatory.  15 U.S.C. § 78u-4(c)(2).  Where a complaint substantially fails to comply with Rule 11(b), the presumptive sanction is an award of reasonable attorneys' fees and other expenses incurred in the action.  15 U.S.C. § 78u-4(c)(3)(A)(ii).

The Rule 11 inquiry does not require a showing of subjective bad faith.  "The mandate of the PSLRA obviates the need to find bad faith prior to the imposition of sanctions." *ATSI*

*Commc'ns.*, 579 F.3d at 152 (holding that the PSLRA's mandatory sanctions provision puts private securities litigants on notice that their actions will be subject to Rule 11 findings and eliminates the subjective bad faith requirement applicable to court-initiated sanctions outside the PSLRA context).  The question is whether the filing was objectively unreasonable after an inquiry reasonable under the circumstances.  *Id.* at 150 (holding that "[s]ince the inquiry must be 'reasonable under the circumstances,' liability for Rule 11 violations 'requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers'") (internal citation omitted).

A claim for attorneys' fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.  Fed. R. Civ. P. 54(d)(2)(A).  The motion must specify the judgment and the statute, rule, or other grounds entitling the movant to the award, and must state the amount sought or provide a fair estimate.  Fed. R. Civ. P. 54(d)(2)(B)(ii).  Arena files this motion in compliance with that procedure and in response to the docketed deadline arising from ECF No. 194.

## ARGUMENT

### A.    Plaintiffs' Claims Against Arena Were Objectively Unreasonable

Rule 11(b)(2) required Plaintiffs and their counsel to ensure that the legal contentions asserted against Arena were warranted by existing law or by a nonfrivolous argument to change the law.  Fed. R. Civ. P. 11(b)(2); *ATSI Commc'ns,* 579 F.3d at 150  ("liability for Rule 11 violations 'requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers'" (citation omitted)).  Plaintiffs were required to ensure that factual contentions against Arena had evidentiary support or were likely to have evidentiary support after reasonable investigation or discovery.  Fed. R. Civ. P. 11(b)(3).  Plaintiffs' claims against Arena failed both requirements.  *See* Opinion at 18–19.

6

First, Plaintiffs' scheme-liability theory was legally foreclosed as pleaded.  Plaintiffs alleged, in substance, that Arena participated in nondisclosure of the Side Letter.  But the Court held that this theory was "easily dismissed" because actionable scheme liability requires something more than an alleged omission.  Opinion at 34.  Arena's reply brief cited well settled authority[2] for the proposition that where the "scheme" is premised on the same misrepresentations and omissions underlying a Rule 10b-5(b) claim, it represents an impermissible attempt to use Rule 10b-5(a) and (c) as a "back door into liability" and no independent scheme-liability claim lies.  Reply at 3, 6–7. These are not novel or contested propositions; the limitation on scheme-liability claims premised on misstatements and omissions has been consistently applied in the Second Circuit.  A reasonable pre-filing inquiry would have revealed that Arena's alleged knowledge of and acquiescence in Charge's nondisclosure could not satisfy that standard.  Plaintiffs identified no deceptive conduct by Arena independent of the alleged nondisclosure.  The "attempt to repackage garden-variety misrepresentation or omission claims as scheme liability claims" therefore failed as a matter of law and was objectively unreasonable.  Opinion at 19.

Second, Plaintiffs lacked an Arena-specific factual basis.  Plaintiffs did not plead that Arena signed or issued the relevant public filings.  They did not plead that Arena had ultimate authority over Charge's public statements.  Under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142-44 (2011), the "maker" of a statement is the entity with "ultimate authority" over its content and whether it is communicated—a standard Arena's Reply

---

[2] *Alpha Cap. Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, No. 1:17-cv-1235-GHW, 2018 U.S. Dist. LEXIS 54594, at *33–34 (S.D.N.Y. Mar. 30, 2018) (holding that where the alleged "scheme" is based on misrepresentations and omissions, subsections (a) and (c) "may not be used as a back door into liability" for those who helped others make a false statement or omission); *Lentell v. Merrill Lynch Co. Inc.*, 396 F.3d 161, 177 (2d Cir. 2005); *Schnell v. Conseco, Inc.*, 43 F. Supp. 2d 438, 447–48 (S.D.N.Y. 1999) (refusing to characterize allegations under subsections (a) and (c) where the alleged "scheme to defraud" was "largely based on [defendant's claimed] misrepresentations and omissions").

demonstrated was plainly not met because ultimate authority over Charge's disclosures rested with Charge's own officers and directors.  Reply at 5–6.  The FAC's Section 20(a) allegations against Arena similarly relied on Arena's status as lender and minority shareholder rather than on any alleged exercise of actual control over Charge's public disclosures, a deficiency Arena's motion to dismiss identified as independently fatal to the control-person claim.  MTD Br. at 20-21.  They did not plead facts establishing an Arena-specific disclosure duty to Charge shareholders.  And they did not identify independent deceptive conduct by Arena.

Third, Plaintiffs' attempt to add a "consent and approval" theory in opposition confirms the absence of a pleaded basis for the Arena claims.  The Court rejected that theory because Plaintiffs could not amend the Complaint through briefing, and because the theory still merely characterized an omission and did not state a scheme-liability claim.  Opinion at 19 n.7.  Even as a textual matter the SPA provision Plaintiffs cited, requiring Charge to issue a press release about the transaction financing, gave Arena no power to require disclosure of the Side Letter specifically, and that Plaintiffs' characterization of the provision misread its scope.  Reply at 5.

The objective unreasonableness of Plaintiffs' claims against Arena is further demonstrated by the litigation history leading up to the FAC.  The FAC was Plaintiffs' ***fifth attempt*** at pleading in this action.  Before Plaintiffs filed the FAC, Arena had already moved to dismiss the Third Amended Complaint, raising substantially the same arguments: that Plaintiffs had not alleged any Arena-specific deceptive act, that Arena was not a maker or signer of any of the allegedly false public filings, and that an allegation of "participation" in an omission cannot sustain scheme liability.  In response to that motion, the Court issued an order on April 16, 2025 expressly warning Plaintiffs that they "will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  ECF No. 107.  Plaintiffs took that opportunity—filing the

8

FAC on May 19, 2025—but carried forward the identical conclusory, information-and-belief allegation against Arena. Plaintiffs were on further notice of the lack of any legal or factual support for their claims against Arena from mediation. Plaintiffs' decision to press forward with the same deficient Arena theory after detailed briefing identifying its legal infirmity, and after an express court warning that no further curative amendment would be permitted is itself compelling evidence that those claims were not warranted by existing law and lacked a sufficient factual basis when filed.

Courts have imposed PSLRA sanctions where the core theory of securities fraud depended on allegations that were unsupported by the cited materials and "utterly lacking in support." *See In re AOL, Inc. Repurchase Offer Litig.*, No. 12 Civ. 3497 (DLC), 2013 WL 6331802, at *3 (S.D.N.Y. Dec. 5, 2013) (imposing PSLRA sanctions where core theory of securities fraud depended on allegations "utterly lacking in support"). Here, Plaintiffs' Arena theory likewise lacked the necessary support: no actionable Arena statement, no Arena disclosure duty, no independent deceptive act, and no pleaded facts supporting the new "consent and approval" theory asserted only in opposition.

**B.    The Rule 11 Violation Was Substantial and Supports a Fee Award**

The defects in Plaintiffs' claims against Arena were not minor or de minimis; they infected the entire theory of liability against Arena. Plaintiffs asserted securities fraud claims against a fellow victim of the misconduct, without any alleged evidentiary support for the claims or colorable legal theory. *See* Opinion at 13 n.4 (noting that Arena had filed suit against Charge's former officers for fraud, negligent misrepresentation, and breach of fiduciary duties); 18–19; FAC ¶ 91. Arena's motion to dismiss argued that the "information and belief" allegation of Arena's "participation" in the omission decision was insufficient under Federal Rule of Civil Procedure 9(b) and the PSLRA's heightened pleading standard because Plaintiffs did not state with

particularity the facts forming the basis for that belief. MTD Br. at 14. The FAC's Section 20(a) allegations against Arena were equally deficient: they were group-pled, status-based assertions attributing control to Arena by virtue of its "financing agreements and/or ownership" without identifying any specific act by which Arena exercised or directed control over Charge's public disclosures, and without alleging that Arena's capped 9.99% equity position was ever increased. MTD Br. at 18-19, 22-23.

As in *Gurary* and *Australia & N.Z. Banking*, the defect was central to the pleading theory, not a peripheral pleading error. *Gurary,* 303 F.3d at 215, 222 (holding that a "substantial failure" to comply with Rule 11(b) triggers the presumptive full-fee sanction under 15 U.S.C. § 78u-4(c)(3)(A), and that the PSLRA "reflects a desire by Congress to 'punish abusive litigation severely'") (citation omitted); *In re Australia & New Zealand Banking Group Ltd. Securities Litigation*, 712 F. Supp. 2d 255, 264–66 (S.D.N.Y. 2010) (finding Rule 11 violation where claims were objectively unreasonable as pleaded and the core defects infected the entire theory of liability); *id.* at 267–68 (holding that substantive pleading failures of this kind satisfy the "substantial failure" standard triggering the PSLRA's presumptive fee award). Those defects required Arena to fully brief two rounds of dispositive motion practice to obtain termination from the action.

Under 15 U.S.C. § 78u-4(c)(3)(A)(ii), when a complaint substantially fails to comply with Rule 11(b), the presumptive sanction is an award to the opposing party of reasonable attorneys' fees and other expenses incurred in the action. *See* 15 U.S.C. § 78u-4(c)(3)(A)(ii); *Gurary*, 303 F.3d at 222; *ATSI Commc'ns*, 579 F.3d at 152. Arena respectfully requests that award here. If the Court wishes to determine entitlement before amount, Arena respectfully requests that the Court

10

set a schedule for submission of declarations, billing records, and any opposition concerning the reasonable amount of fees and expenses to be awarded.

### C. The Court Should Consider Arena's Motion Now or Deem It Timely Preserved

Arena files this motion now because the docket notice identifies ECF No. 194 as triggering the Rule 54(d)(2) deadline for motions seeking attorneys' fees and related nontaxable expenses. Arena has been dismissed in full, leave to amend has been denied as to the dismissed claims, and Arena has been terminated from the case.[3]  The Court's docket notice directs fee motions now. Accordingly, Arena respectfully requests that the Court either reach the motion on the merits, deem Arena's request timely preserved, or set an appropriate schedule for PSLRA Rule 11 submissions, including proposed findings of fact and conclusions of law, declarations, and fee documentation if the Court determines that such a procedure would be useful.

### CONCLUSION

For the foregoing reasons, the Arena Defendants respectfully request that the Court grant this protective motion and enter an order:

1.  deeming Arena's request for attorneys' fees and related nontaxable expenses timely preserved under Rule 54(d)(2);

2.  making, or setting a schedule for, the findings required by 15 U.S.C. § 78u-4(c);

3.  finding, after notice and opportunity to respond, that Plaintiffs and/or their counsel violated Rule 11(b) as to the claims asserted against Arena;

4.  awarding Arena its reasonable attorneys' fees and related nontaxable expenses, in an amount to be determined upon further submissions if necessary; and

---

[3] Arena, however, is now entitled to recover as a plaintiff in this action as a shareholder of Charge.

5.  alternatively, denying this motion without prejudice to renewal after final judgment if the

Court concludes that PSLRA final adjudication has not yet occurred.


WORD COUNT: 3506

Dated:   July 7, 2026                     Respectfully submitted,
         New York, N.Y.


                                          */s/ Laura J. Garr*
                                          Laura J. Garr
                                          Sally Kagay
                                          WHITE & CASE LLP
                                          1221 Avenue of the Americas
                                          New York, N.Y. 10020-1095
                                          T: (212) 819-8200
                                          laura.garr@whitecase.com


                                          *Attorneys for Defendants*

12