**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID FINKELSTEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW FOX, LEAH SCHWELLER, CRAIG DENSON, PHILLIP P. SCALA, JUSTIN DEUTSCH, JAMES MURPHY, BARON DAVIS, BENJAMIN CARSON, JR., CHANTEL E. LENARD, GARY JACOBS, AMY HANSON, JACKY WU, KENNETH ORR, KORR ACQUISITIONS GROUP, INC., KORR VALUE, L.P., ARENA INVESTORS, LP, AI AMPED I, LLC, AI AMPED II, LLC, MT. WHITNEY SECURITIES, LLC, ARENA ORIGINATION CO., LLC, ARENA FINANCE MARKETS, LP, ARENA SPECIAL OPPORTUNITIES FUND, LP, ARENA SPECIAL OPPORTUNITIES PARTNERS, I, LP, ARENA STRUCTURED PRIVATE INVESTMENTS LLC, and ARENA INVESTORS GP, LLC,<br><br>Defendants. | Case No. 1:24-cv-04056 (JMF)<br><br>Honorable Jesse M. Furman |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**<u>MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1
SUMMARY OF THE ACTION AND SETTLEMENT ....................2
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ....................2
II. THE SETTLEMENT ....................9
ARGUMENT ....................11
III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ....................11
A. The Settlement Class Was Well-Represented by Plaintiffs and Lead Counsel ....................13
B. The Settlement Was Negotiated At Arm's Length ....................14
C. The Settlement Provides Adequate Relief ....................15
1. The Relief Provided for the Class Is Adequate, Outweighing the Costs, Risks, and Delay of Trial and Appeal ....................15
2. The Proposed Methods for Distributing Relief Are Effective and Treats Settlement Class Members Equally ....................17
3. The Anticipated Request for Attorneys' Fees Is Reasonable ....................18
D. The Remaining *Grinnell* Factor Support Preliminary Approval ....................19
1. The Stage of the Proceedings and the Amount of Discovery Completed ....................20
2. The Range and Certainty of Possible Recovery and Defendants' Ability to Withstand a Greater Judgment ....................20
IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ....................22
A. The Settlement Class Satisfies the Requirements of Rule 23(a) ....................22
B. Rule 23(B)(3)'s Requirements Are Satisfied ....................24
V. THE PROPOSED FORMS AND METHODS OF CLASS NOTICE SHOULD BE APPROVED ....................26
VI. PROPOSED SCHEDULE OF EVENTS ....................28
CONCLUSION ....................28

# TABLE OF AUTHORITIES

## Cases

*In re 3D Sys. Sec. Litig.*,
No. 21-CV-1920 (NGG)(TAM), 2023 U.S. Dist. LEXIS 98693 (E.D.N.Y. June 5, 2023) .......... 15, 26

*In re Advanced Battery Techs. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .......... 26

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972) .......... 24

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) .......... 20

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) .......... 24

*Balestra v. Abtcoin LLC*,
No. 17-cv-10001 (VSB), 2022 U.S. Dist. LEXIS 57393 (S.D.N.Y. Mar. 29, 2022) .......... 11, 12

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) .......... 16, 19

*Billhofer v. Flamel Techs., S.A.*,
281 F.R.D. 150 (S.D.N.Y. 2012) .......... 22

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 18

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) .......... 24

*Carpenters Pension Tr. Fund of St. Louis v. Barclays LPC*,
310 F.R.D. 69 (S.D.N.Y. 2015) .......... 23

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) .......... 11

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) .......... 18

*In re Charter Commc'ns, Inc.*,
No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005) .......... 18

*Christine Asia Co. v. Jack Yun Ma*,
No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) .......... 15, 20, 25

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......... *passim*

*D'Amato v. Deutche Bank*,
236 F.3d 78 (2d Cir. 2001) ....................14

*Dodona I, LLC v. Goldman, Sachs & Co.*,
296 F.R.D 261 (S.D.N.Y. 2014) ....................22, 23

*In Facebook, Inc.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ....................15, 17

*Fishoff v. Coty Inc.*,
No. 09 Civ. 628 (SAS), 2010 U.S. Dist. LEXIS 6242 (S.D.N.Y. Jan. 25, 2010)....................16

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................16

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ....................12, 18

*Gonqueh v. Leros Point to Point, Inc.*,
No. 1:14-cv-5883-GHW, 2015 U.S. Dist. LEXIS 117166 (S.D.N.Y. Sep. 2, 2015)
(Woods, J.) ....................11

*Gordon v. Vanda Pharm. Inc.*,
No. 19 CV 1108 (FB)(LB), 2022 U.S. Dist. LEXIS 169982 (E.D.N.Y. Sep. 15, 2022).........12

*Helfer v. Wells Fargo & Co.*,
No. 16-civ-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sep. 4, 2018)................12

*In re JPMorgan Chase & Co. Sec. Litig.*,
No. 12 Civ. 03852 (GBD), 2015 U.S. Dist. LEXIS 132181 (S.D.N.Y. Sep. 29, 2015)....21, 22

*Lea v. Tal Educ. Grp.*,
No. 18-CV-5480 (KHP), 2021 U.S. Dist. LEXIS 229314 (S.D.N.Y. Nov. 30, 2021) ............18

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................19

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009)..............24

*McIntosh v. Katapult Holdings, Inc.*, No. 21-CV-0751 (AS) (KHP),
2024 U.S. Dist. LEXIS 226619 (S.D.N.Y. Dec. 13, 2024) ....................20

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ....................20

*Noto v. 22nd Century Grp., Inc.*,
No. 19-cv-01285-JLS-MJR, 2023 U.S. Dist. LEXIS 187531 (W.D.N.Y. Oct. 17, 2023) ......19

*In re PaineWebber Ltd. P'shps. Litig.*,
147 F.3d 132 (2d Cir. 1998) ....................11

*Palacio v. E*Trade Fin. Corp.*,
No. 10 Civ. 4030 (RJH) (DCF), 2012 U.S. Dist. LEXIS 41886
(S.D.N.Y. Mar. 12, 2012) ....................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ....................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ....................13

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ....................13

*In re PPDAI Grp. Inc. Sec. Litig.*,
No. 18-CV-6716 (TAM), 2022 U.S. Dist. LEXIS 11427
(E.D.N.Y. Jan. 21, 2022) ....................20

*In re Prudential Sec. Inc. Ltd. P'shps. Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ....................21

*Rodriguez v. CPI Aerostructures, Inc.*,
No. 20 CV 982 (ENV) (CLP), 2023 U.S. Dist. LEXIS 26891 (E.D.N.Y. Feb. 16, 2023) ......20

*In re Sanofi-Aventis Sec. Litig.*,
293 F.R.D. 449 (S.D.N.Y. 2013) ....................24

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 1:16-cv-06728-CM-SDA, 2020 U.S. Dist. LEXIS 128998
(S.D.N.Y. July 21, 2020) ....................16

*Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC) (RML),
2024 U.S. Dist. LEXIS 161838 (E.D.N.Y. Sep. 9, 2024) ....................19

*Sudunagunta v. NantKwest, Inc.*,
No. CV 16-1947-MWF (JEMx), 2019 U.S. Dist. LEXIS 81337
(C.D. Cal. May 13, 2019) ....................13

*In re Symbol Techs., Inc. Sec. Litig.*,
No. 05-CV-3923 (DRH)(AKT), 2015 U.S. Dist. LEXIS 82756
(E.D.N.Y. June 15, 2015) ....................22

*In re Take Two Interactive Sec. Litig.*,
No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010) ...............26

*Too v. Rockwell Med., Inc.*,
No. 1:18-cv-04253, 2020 U.S. Dist. LEXIS 38480 (E.D.N.Y. Feb. 26, 2020) ....................25

*In re Veeco Instruments Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) .............16

*Wallace v. Intralinks*,
302 F.R.D. 310 (S.D.N.Y. 2014) ....................22

**Rules**

Fed. R. Civ. P. 23 *et seq.* .................... *passim*

Lead Plaintiff Timothy K. Klintworth ("Plaintiff") respectfully submits this Memorandum of Law in support of Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement (the "Motion") and requests entry of an order preliminarily approving the proposed settlement, certifying the proposed Settlement Class for settlement purposes only, and providing for notice to the proposed Settlement Class (the "Preliminary Approval Order").

## PRELIMINARY STATEMENT

The Parties[1] to the settlement in this securities class action (the "Action") have agreed to resolve all claims regarding Charge Enterprises, Inc. ("Charge" or the "Company") against defendants Leah Schweller ("Schweller"), Craig Denson ("Denson") and Phillip Scala ("Scala"), and the dismissed defendants, Andrew Fox ("Fox"), Justin Deutsch, James Murphy ("Murphy"), Baron Davis, Benjamin Carson, Jr. ("Carson"), Chantel Lenard, Gary Jacobs, Amy Hanson, and Jacky Wu (collectively, the "Settling Defendants") for $4,000,000 in cash (the "Settlement Amount"). If approved, the Settlement will result in dismissal of the Action.

The Settlement is the result of extensive, good-faith, well-informed, arm's-length negotiations among the Parties with experienced counsel, which included one in-person mediation session and follow on negotiations with mediators David Murphy and Michelle Yoshida, Esq. (the "Mediator") of Phillips ADR, and subsequent correspondence and telephonic discussions between the Parties and Ms. Yoshida over the course of two months.

While Plaintiff believes the Claims are meritorious, he recognizes that significant risks and uncertainty remain to continuing litigation which may result in delayed compensation for the Settlement Class and perhaps no compensation at all. The Settlement is a favorable result for the

[1] All capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Stipulation and Agreement of Settlement dated October 12, 2026 (the "Stipulation"), attached as Exhibit 1 to the Declaration of Brandon Walker submitted herewith (the "Walker Declaration" or the "Walker Decl.").

Settlement Class, providing for an immediate recovery that will be funded by the limited amount of remaining D&O insurance. As such, the resolution of the Action with the recovery of $4,000,000 for the Settlement Class is beneficial and in the best interests of the Settlement Class.

Accordingly, Plaintiff respectfully submits that the Settlement warrants preliminary approval and respectfully requests that the Court grant preliminary approval and enter the Preliminary Approval Order providing for, *inter alia*, Notice of the Settlement to Class Members. Additionally, because all of the requirements for class certification approval are met, Plaintiff respectfully requests that the Court certify the Settlement Class for settlement purposes only.

## SUMMARY OF THE ACTION AND SETTLEMENT

### I. Factual Background and Procedural History

Charge is an electrical, broadband, and electric vehicle ("EV") charging infrastructure company. During the Class Period, Charge's business, including through its various subsidiaries, had two primary segments: infrastructure, with a focus on EV charging stations and wireless network communications; and telecommunications, with a focus on connections for voice calls and data to global carriers. Before its delisting, Charge common stock traded on the NASDAQ stock exchange under the ticker symbol "CRGE." Charge common stock was effectively cancelled by the confirmation of its bankruptcy plan.

The Action alleges that in various public statements and documents, the Settling Defendants, the former CEO of Charge, Kenneth Orr ("Orr") and his related entities (collectively with Orr, the "Korr Defendants"), and Arena[2], made materially false and misleading statements and/or failed to disclose, *inter alia*: (i) the nature and extent of Charge's relationship and

[2] "Arena" refers to a number of related entities identified in the Complaint and defined below who financed Charge and claimed to be a 9.99% shareholder during the Class Period.

investments with the Korr Defendants; (ii) that in connection with subordinated convertible financing, Arena had entered into an agreement to purchase 9,000,000 shares from Charge's insiders, Fox and an Orr controlled entity (4.5 million shares from each) at a price of about $0.22 per share at a time when Charge's market price was approximately $3.50 per share; (iii) that, according to Orr, in connection with that agreement, an Orr controlled entit(ies) caused an additional 4.5 million shares of Charge common stock to be transferred to Arena to fulfill Fox's pledge under the Side Letter, based on Charge's promise to make the transferor whole on the anticipated date of Charge's common stock listing on the Russell 2000 Index; (iv) that Charge's unrestricted cash actually represented an investment in a private equity fund that required advance notice of withdrawals before the cash could be available; (v) that Charge's current assets, including cash balances and investments in marketable securities, and Charge's total liquidity were misstated; (vi) that Charge had considered Arena's actions in interfering with Charge's efforts to refinance its debt as sufficiently egregious that it retained counsel at the law firm of Cravath to prepare a complaint against Arena asserting claims of lender liability, among other claims; (vii) that Charge's fundamental financial condition, liquidity, business prospects and going concern risk were undisclosed; and (viii) that the operation and adequacy of Charge's internal controls were misstated.

On November 21, 2023, Charge filed a Form 8-K with the SEC after the market closed reporting that it had received a default letter from Arena on November 15, 2023, claiming that, in addition to default notice that, *inter alia*, an additional $3,345,297.87 in interest (reflecting the difference in the default interest rate of 20% and the interest rate of 7.5% per annum commencing from October 25, 2022, on an aggregate principal amount of $25,847,409.00) and additional legal fees, expenses, and other costs of at least $692,216.15 were immediately due and payable.

On December 6, 2023, Charge filed a Form 8-K with the SEC reporting that it had received a subsequent additional default letter from Arena on December 1, 2023, claiming additional events of default from alleged breaches of several representations, warranties, and covenants relating to the Special Advisor Agreement with KORR Acquisitions Group, Inc. ("KORR Acquisitions") and the Company's investments managed by KORR Acquisitions and related matters. A second letter of the same date claimed events of default under a certain exchange agreement, dated June 30, 2022, by and between the Company and certain affiliates of Arena.

On January 25, 2024, Charge filed a Form 8-K with the SEC reporting, among other things, that on January 19, 2024, the Company received a foreclosure notice from an affiliate of Arena.

On February 28, 2024, Charge filed a report on Form 8-K with the SEC notifying the public that it had entered into a Restructuring and Plan Support Agreement, dated February 27, 2024, with Arena providing for a comprehensive restructuring of Charge to be implemented through the commencement of a voluntary Chapter 11 case (the "RSA"). The effect of the proposed RSA was the cancellation of all existing and preferred common stock of Charge and conversion of the existing indebtedness to Arena and its affiliates into new Charge common stock.

On March 7, 2024, Charge filed a voluntary petition in bankruptcy under Chapter 11 of the United States Bankruptcy Code. The price of Charge's common stock decreased following these revelations.

Ultimately, through the bankruptcy process, Arena acquired full control of Charge, Charge's claims against Arena were released, any claims by Arena against the directors and officers were expressly capped at any available directors' and officers' insurance coverage, and Charge, Orr and his related entities, and Arena resolved all claims and released one another from any existing claims.

On May 28, 2024, a class action complaint captioned *Finkelstein v. Fox et al.*, Case No. 1:24-cv-04056 (JMF) was filed in the United States District Court for the Southern District of New York asserting violations of the federal securities laws against certain of the Management Defendants on behalf of all persons and entities who purchased or otherwise acquired Charge common stock between December 15, 2021 and February 28, 2024.

On August 29, 2024, the Court appointed Steven Weil, David Klein, Issac Bryon, and Elliot Abromowitz (the "Brooklyn Investor Group") as Lead Plaintiffs in the Action and approved the Brooklyn Investor Group's selection of Kirby McInerney LLP and Rolnick Kramer Sadighi LLP as Co-Lead Counsel for the Class. Dkt. No. 44. On November 5, 2024, the Brooklyn Investor Group filed the Amended Complaint for Violations of the Federal Securities Laws adding the Korr Defendants as additional defendants, and expanding the class period from October 28, 2021, through and including February 28, 2024. Dkt. No. 51.

On November 14, 2024, the Court So Ordered the notice of voluntary partial dismissal without prejudice filed by Lead Plaintiffs Steven Weil and David Klein. Dkt. No. 55. Also on November 14, 2024, the Court issued an Order to Show Cause observing that "without Weil and Klein, the Brooklyn Investor Group would not have had the largest financial interest in the relief sought; that title would presumably have gone to Timothy K. Klintworth instead. *See* ECF Nos. 37-1, 37-2." Dkt. No. 56. The Court Ordered that the Brooklyn Investor Group show cause why the Court should not reopen the appointment of Lead Plaintiff and/or substitute Klintworth in its place as Lead Plaintiff. *Id.*

On December 5, 2024, the Court reopened the appointment of Lead Plaintiff and granted Plaintiff Klintworth's request to be substituted as Lead Plaintiff in place of the Brooklyn Investor

Group and approved the appointment of Bragar Eagel & Squire, P.C. as new Lead Counsel for Lead Plaintiff and the proposed class. Dkt. Nos. 60-61.

On January 17, 2025, Plaintiff filed a Second Amended Complaint for Violations of the Federal Securities Laws, adding as defendants Arena Investors, LP, AI Amped I, LLC, AI Amped II, LLC, Mt. Whitney Securities, LLC, Arena Origination Co., LLC, Arena Finance Markets, LP, Arena Finance Markets, LP, Arena Special Opportunities Fund, LP, Arena Special Opportunities Partners, LLP, Arena Structured Private Investments, LLC, and Arena Investors GP, LLC (collectively, "Arena"). Dkt. No. 66.

On March 5, 2025, Plaintiff moved pursuant to Federal Rule of Civil Procedure 15(a)(2) for an Order granting leave to file a Third Amended Complaint to add certain outside directors of Charge as defendants. Dkt. No. 81. On March 9, 2025, the Court granted Plaintiff's motion for leave to amend the Second Amended Complaint and ordered that any such complaint be filed on or before March 11, 2025. Dkt. No. 84. On March 10, 2025, Plaintiff filed the Third Amended Complaint for Violation of the Federal Securities Laws (the "TAC") adding the Director Defendants as defendants. Dkt. No. 85.

On April 11, 2025, Plaintiff and certain defendants agreed in a Joint Stipulation to an extension of time for those defendants to answer or otherwise respond to the TAC until 30 days after the completion of a contemplated mediation. Dkt. No. 99. On April 15, 2025, the Court approved the stipulation and directed the parties to advise the Court of the date of the scheduled mediation. Dkt. No. 103.

On April 14, 2025, Arena filed a motion to dismiss the TAC under Rule 12(b) of Federal Rules of Civil Procedure. Dkt. No. 100. On April 16, 2025, the Court issued an order directing that Plaintiff file any amended complaint by May 5, 2025 (extended by agreement and Order to

May 19, 2025) in response to Arena's motion to dismiss. Dkt. No. 107. The Court further ordered that Plaintiff would not be given any further opportunity to amend the complaint to address issues raised by Arena's motion to dismiss. *Id*. On May 19, 2025, Plaintiff filed the Fourth Amended Complaint for Violation of the Federal Securities Laws (the "FAC"). Dkt. No. 119. On June 23, 2025, Arena filed a motion to dismiss the FAC under Rule 12(b) of Federal Rules of Civil Procedure. Dkt. No. 125. On July 30, 2025, Plaintiff moved for the entry of default against defendants Phillip P. Scala ("Scala"), James Murphy ("Murphy"), and Benjamin Carson, Jr. ("Carson") for failure to appear or respond in a timely manner. Dkt. No. 132. On July 31, 2025, the Court scheduled a briefing schedule for the default judgment with opposition due on August 20, 2025, and a show cause hearing on the motion for August 27, 2025. Dkt. No. 136. On August 20, 2025, defendants Murphy, Carson, and Scala filled a Brief in Opposition to Plaintiff's Motion for Entry of Default Judgment (the "Opposition") and proposed an order setting their response to the FAC as September 15, 2025. Dkt. No. 143. The parties subsequently conferred and stipulated that Plaintiff would withdraw his request for a default and defendants Murphy, Carson, and Scala would acknowledge service and have until September 15, 2025, to respond to the FAC. Dkt. Nos. 144, 148 ("Order").

On August 21, 2025, Plaintiff filed his opposition to Arena's motion to dismiss the FAC. Dkt. No. 147. On September 22, 2025, Arena filed its reply in further support of its motion to dismiss. Dkt. No. 173.

On September 15, 2025, defendants Fox (Dkt. No. 179), Denson and Schweller (Dkt. No. 171), the Director Defendants (Dkt. Nos. 163, 164), and the Korr Defendants (Dkt. No. 166) each filed motions to dismiss the FAC. On November 6, 2026, Plaintiff filed his consolidated opposition to the Motions to Dismiss the Fourth Amended Complaint filed by defendants Fox, Denson and

Schweller, the Director Defendants, and the Korr Defendants. Dkt. No. 176. On December 11, 2025, defendants Fox, Denson and Schweller, and the Director Defendants filed a consolidated reply in further support of their respective motions to dismiss the FAC (Dkt. No. 178), and the Korr Defendants filed a reply in further support of its motion to dismiss the Complaint (Dkt. No. 177).

On March 17, 2026, Plaintiff moved for an Order providing for limited relief from the automatic stay of discovery to allow for certain discovery ("Discovery Motion"). Dkt. No. 182. Also on March 17, 2026, the Court issued an Order providing that Defendants shall file responses, if any, to Plaintiff's Discovery Motion no later than March 27, 2026 (extended to April 10, 2026), and should confer in good faith and, to the extent feasible, submit responses jointly. Dkt. No. 186. On April 10, 2026, the Settling Defendants filed a joint opposition to the Discovery Motion. Dkt. No. 191. Also on April 10, 2026, Arena filed an opposition to the Discovery Motion. Dkt. No. 192. On April 17, 2026, the Court issued an Order denying Plaintiff's Discovery Motion. Dkt. No. 193.

On June 23, 2026, the Court issued its Opinion and Order on the motions to dismiss. Dkt. No. 194. The Court denied Scala's motion relating to the existence and terms of the Korr Value LPA and granted the other Settling Defendants' motion as to the claim for failure to adequately allege scienter and the Korr Defendants' motion because Orr made no misstatement during the Class Period.

The Court's Order also denied Schweller and Denson's motion as to the omissions relating to Charge's liquidity problems, but granted motions on those claims as to the Director Defendants and Fox on scienter grounds. The Court dismissed the claims relating to the Side Letter finding that scheme liability required more than misstatements and omissions; the Director Defendants,

Denson and Schweller lacked scienter, and; the claims against Fox failed to adequately allege loss causation. The Court also granted the Settling Defendants motions on the claims relating to Orr's continued involvement for lack of scienter and the Korr Defendants for lack of loss causation. The claims relating to Charge's dispute with Arena and SOX certifications were also dismissed. Finally, the Court refused to allow Plaintiff leave to amend the dismissed claims. By separate Order the Court scheduled an initial pre-trial conference for August 19, 2026. Dkt. No. 195.

On August 6, 2026, defendant Scala filed his answer to the FAC. Dkt. No. 203. The time for defendants Schweller and Denson to answer the FAC was extended by stipulation until August 13, 2026. Dkt. Nos. 204 & 205. After the parties informed the Court via letter of the settlement on August 12, 2026, the Court adjourned the initial pretrial conference, granted a stay of further litigation activity and set a schedule for the filing of this Motion. Dkt. No. 207.

## II. The Settlement

In and around February and March 2025, Plaintiff and counsel for certain defendants began discussions regarding an early mediation. On July 29, 2025, an in-person mediation was conducted with David Murphy of Phillips, ADR, a well-respected and highly experienced mediator in the area of securities class actions, in which certain defendants participated. The Parties exchanged detailed mediation statements in connection with the mediation process. The Parties did not reach a resolution at the mediation.

Beginning in early April 2026 and continuing throughout the period until the Parties reached an agreement in late July 2026, counsel for Plaintiff and the Settling Defendants continued discussions regarding a possible settlement of the claims asserted against these defendants. In July, the Parties agreed to return to mediation, this time with Michelle Yoshida, Esq., an experienced mediator also with Phillips ADR, and a zoom mediation was scheduled for Thursday,

July 29, 2026. With Ms. Yoshida's assistance, the Parties continued their discussions and reached an agreement in principle on the eve of the scheduled mediation.

On August 12, 2026, the Parties notified the Court that they had agreed in principle to a settlement and requested an adjournment of the initial pre-trial conference and a stay of the action. Dkt. No. 206. Subsequently, the Parties negotiated the terms of the Settlement and related supporting documents, entering into the Stipulation on October 12, 2026.

At the time the Parties executed the term sheet, Lead Counsel had thorough knowledge of the claims and defenses in the Action through the investigation and drafting of three complaints, opposing multiple motions to dismiss, and working with damages experts.

In accordance with the Stipulation, the Settling Defendants shall pay or cause to be paid the Settlement Amount of $4,000,000 into the Escrow Account following the issuance of the Preliminary Approval Order. *See* Stipulation ¶2.1 The Settlement Fund shall be used to pay Taxes and Tax Expenses, Notice and Administration Costs, any attorneys' fees and expenses awarded by the Court, and any Award to Plaintiff, with the balance (the "Net Settlement Fund") to be distributed to Authorized Claimants in accordance with a Plan of Allocation to be approved by the Court. *Id.* ¶¶4, 7. In return, the Settlement provides that Plaintiff and the Settlement Class will release all Released Plaintiff Claims against the Released Defendant Parties. *Id.* ¶3.3.

Under the Settlement, the Parties have agreed to certification of the following Settlement Class for settlement purposes only: all Persons and entities who purchased or otherwise acquired Charge common stock during the period from October 28, 2021, through and including February 28, 2024 (the "Class Period").[3] *See* Stipulation ¶1.36.

---

[3] Excluded from the Settlement Class are the Settling Defendants, other former officers and directors of Charge, members of their immediate families and their legal representatives, heirs, agents, affiliates, successors, or assigns, the Settling Defendants' liability insurance carriers and any affiliates or subsidiaries thereof in their capacities as such, and any entity in which any excluded party has or had a controlling interest. Also excluded from the Settlement Class

Before the Court holds a final approval hearing, Lead Counsel will move for an award of attorneys' fees not to exceed one-third of the Settlement Amount plus interest and reimbursement of no more than $200,000 in litigation expenses, which may include an Award to Plaintiff.

## ARGUMENT

### III. The Proposed Settlement Warrants Preliminary Approval

Courts within this Circuit and throughout the country have long recognized a strong public policy and presumption in favor of settlements, "particularly in the class action context." *In re PaineWebber Ltd. P'shps. Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).[4] Rule 23(e) of the Federal Rules of Civil Procedure ("Rule") requires the presentation of a class action settlement to the court for a preliminary determination as to whether it is sufficiently "fair, reasonable and adequate" to justify notice to those affected by the settlement. Fed. R. Civ. P. 23(e)(2). Approval of a settlement is within the court's discretion, but "courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Gonqueh v. Leros Point to Point, Inc.*, 2015 U.S. Dist. LEXIS 117166, at *2-3 (S.D.N.Y. Sep. 2, 2015); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (holding that courts should "not decide the merits of the case or resolve unsettled legal questions" in reviewing class action settlements).

Review of a class action settlement is a two-step process. The court first performs a preliminary review to determine whether notice should be sent to the class; and then, after notice is provided and a hearing set, the court makes a final determination as to whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *Balestra v. Atbcoin LLC*, 2022 U.S. Dist.

---

will be any Person who or which who or which requests exclusion from the Settlement Class by submitting a timely and valid request for exclusion that is accepted by the Court. Stipulation ¶1.36.

[4] All citations and internal quotations are omitted and all emphasis is added, unless otherwise noted.

LEXIS 57393, at *5-6 (S.D.N.Y. Mar. 29, 2022). Key to the court's evaluation at this juncture is whether "giving notice [to the class] is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). A proposed settlement of a class action should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Balestra*, 2022 U.S. Dist. LEXIS 57393, at *6.

Pursuant to Rule 23(e)(2), a court's inquiry as to whether a settlement is fair, reasonable, and adequate must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ;[5] and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). "Courts also supplement [the Rule 23(e)(2)] analysis with the" Second Circuit's long-standing *Grinnell* factors.[6] *Gordon v. Vanda Pharm. Inc.*, 2022 U.S. Dist. LEXIS 169982, at *7 (E.D.N.Y. Sep. 15, 2022). However, courts should not "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held 'it is not necessary to exhaustively consider the factors applicable to final approval"

[5] In addition to the Stipulation and its preceding term sheet, the Parties have entered into a standard supplemental agreement providing the Settling Defendants with the option to terminate the Settlement in the event that requests for exclusion from the Class exceed certain agreed-upon criteria. *See* Stipulation ¶11.5. As is customary in securities class action settlements, the Supplemental Agreement terms are confidential to "avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." *Helfer v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal. Sep. 4, 2018).

[6] The *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *abrogated on other grounds by*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

when considering preliminary approval. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 30 n.24 (E.D.N.Y. 2019). The proposed Settlement satisfies the applicable factors, and the Court can confidently approve the Settlement as fair, reasonable, and adequate.

**A. The Settlement Class Was Well-Represented by Plaintiff and Lead Counsel**

Plaintiff and Lead Counsel adequately represented the Settlement Class throughout the litigation and resolution of the Action as required by Rule 23(e)(2)(A). Plaintiff has no interests antagonistic to the other Settlement Class Members; Plaintiff's claims are typical of those of other Settlement Class Members; and Plaintiff and the Settlement Class share a common goal of maximizing recovery. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Further, Plaintiff has remained active and informed throughout the litigation, communicating regularly with Lead Counsel, among other things.

Lead Counsel is highly experienced in prosecuting securities class actions and other complex litigation. *See* Dkt. No. 20-5 (Lead Counsel firm résumé); *see also, e.g.*, *Sudunagunta v. NantKwest, Inc.*, 2019 U.S. Dist. LEXIS 81337, at *11-12 (C.D. Cal. May 13, 2019) (noting BES's "extensive experience in securities fraud litigation and class actions"). Plaintiff and Lead Counsel vigorously litigated this case for almost two years. At the time Settlement was reached, Lead Counsel had, among other things: (i) reviewed and analyzed, *inter alia*, Charge's SEC filings and press releases, news articles concerning Charge, documents publicly filed in Charge's bankruptcy proceedings, and documents publicly filed in *Charge Enterprises, Inc. v. Kenneth Adam Orr et al.*, Index No. 650109/2024 (N.Y. Sup. Ct., N.Y. Cnty.); (ii) drafted the detailed Second Amended

Complaint, TAC, and FAC; (iii) analyzed and addressed the multiple motions to dismiss arguments; (iv) analyzed and addressed defendants' arguments in opposition to Plaintiff's Discovery Motion; (v) consulted with damages experts; (vi) drafted and exchanged a detailed mediation statement setting forth the facts and strengths of the Action and potential damages; and (vii) engaged in an in-person mediation session before David Murphy and participated in further telephonic settlement negotiations with the aid of the Mediator.

Thus, Plaintiff and Lead Counsel were well-informed about the strengths and weaknesses of the Action, enabling them to appropriately consider the terms of the Settlement, the risks associated with continued litigation, and ultimately, the Settlement's fairness, reasonableness, and adequacy.

Accordingly, the Settlement Class has been, and continues to be, well represented.

### B. The Settlement Was Negotiated At Arm's Length

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Here, the proposed Settlement was the product of extensive arm's-length negotiations, facilitated by a mediator experienced in securities class actions between highly experienced counsel knowledgeable about the Action.[7] The proposed Settlement was achieved only after an initial in-person mediation session on July 29, 2025, preceded by submissions of detailed mediation statements. Although the mediation was unsuccessful, Plaintiff and the Settling Defendants once again resumed mediation negotiations in early April 2026 with a remote mediation scheduled for July 29, 2026. With Ms. Yoshida's assistance, the Parties continued their discussions and reached an agreement in principle on the eve of the scheduled mediation. *See D'Amato v. Deutche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (concluding that a "mediator's

[7] Like Plaintiff, the Settling Defendants were at all times represented by highly experienced counsel.

involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Palacio v. E*Trade Fin. Corp.*, 2012 U.S. Dist. LEXIS 41886, at *3 (S.D.N.Y. Mar. 12, 2012) ("The assistance of an experienced class action mediator . . . reinforces that the Settlement Agreements are non-collusive."). This arm's-length process supports a presumption of fairness, free of fraud or collusion.

### C. The Settlement Provides Adequate Relief

Rule 23(e)(2)(C) directs the Court to considering four factors when evaluating whether the relief provided for the class is adequate. The proposed Settlement satisfies each of these factors, providing substantial relief for the Class.

#### 1. The Relief Provided for the Class Is Adequate, Outweighing the Costs, Risks, and Delay of Trial and Appeal

In assessing the Settlement, the Court should consider the immediate and certain benefits of the proposed Settlement against the substantial cost, risks, and delay of further litigation. *See* Rule 23(e)(2)(C)(i).[8] There is no question that continued litigation is costly, risky, and lengthy. Securities class actions are notoriously complex, often taking exceptionally long to litigate, making settlement favorable. *See Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, at *40-41 (S.D.N.Y. Oct. 16, 2019) ("In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."); *In Facebook, Inc.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) (noting that "securities class actions are recognized by courts as 'notably difficult and notoriously uncertain to litigate'").

---

[8] This "factor 'subsumes several *Grinnell* factors' including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial (factors 1, 4, 5, and 6)." *In re 3D Sys. Sec. Litig.*, 2023 U.S. Dist. LEXIS 98693, at *15-16 (E.D.N.Y. June 5, 2023).

First, if litigation were to proceed, Plaintiff would have to prevail on a motion for class certification for which there is no guarantee of success, and "even if plaintiff[] could obtain class certification, there could be a risk of decertification at a later stage." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004).

Second, while Plaintiff believes his claims have merit, Plaintiff would also face significant risks on summary judgment and/or at a trial on the merits, adding substantial cost and time. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 U.S. Dist. LEXIS 128998, at *13 (S.D.N.Y. July 21, 2020) ("Achieving a litigated verdict would have required substantial additional time and expense."). Indeed, the Court has already dismissed several of Plaintiff's claims. *See* Dkt. No. 194.

Additionally, the Settling Defendants continue to deny all of Plaintiff's remaining allegations and would likely put forth arguments as to falsity, scienter, and loss causation at trial. For example, the Settling Defendants have contended throughout the litigation that the alleged misstatements and omissions were not material. The Settling Defendants would likely argue as well that Plaintiff cannot demonstrate scienter as they did in their motion to dismiss.[9] Further, loss causation arguments and damages issues often become a "battle of the experts" and "[w]hen the success of a party's case turns on winning a so-called 'battle of the experts,' victory is by no means assured." *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Such risks militate in favor of settlement, particularly because "it is difficult to predict" how juries will decide these difficult issues. *In re Veeco Instruments Sec. Litig.*, 2007 U.S. Dist. LEXIS 85629, at *27 (S.D.N.Y. Nov. 7, 2007). Even if Plaintiff was to succeed at trial, Plaintiff would likely face post-

---

[9] Scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, 2010 U.S. Dist. LEXIS 6242, at *5 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011).

verdict motions and appeals, further prolonging the time for recovery for the Settlement Class and risking a potential loss on appeal.

Continued litigation poses the risk of not only years passing before final resolution but also the added risk of no recovery at all even if fully successful on the merits because Charge is bankrupt and certain Settling Defendants are involved in a similar lawsuit. Given the complexities, uncertainties, and expense inherent in continued litigation, the proposed Settlement is in the best interests of the Class, providing a favorable, immediate cash recovery.

**2. The Proposed Methods for Distributing Relief Are Effective and Treat Settlement Class Members Equally**

Rule 23(e)(2)(C)(ii) requires the method of distributing relief to the class be effective and Rule 23(e)(2)(D) requires evaluation of whether the Settlement treats class members equitably relative to one another. The Settlement satisfies these standards. The claims administration process for distribution of the Settlement Amount will proceed in the manner typical in securities class action settlements with the assistance of an established and experienced claims administrator, Epiq Systems, Inc. ("Epiq") Epiq will employ a well-established securities class action distribution process. Namely, a potential class member will submit the Court-approved Claim Form that provides simple instructions to claimants concerning the necessary information they must present to process their claims and the deadlines by which they must do so. Each claimant's submission will be reviewed by Epiq for eligibility determination, and claimants will be provided an opportunity to cure any deficiencies in their claims. *See* Stipulation ¶7.11(d).

Calculations of each claimant's "Recognized Claim" will be completed in accordance with the Court-approved Plan of Allocation, which was "prepared by experienced counsel along with a damages expert—both indica of reasonableness." *Facebook*, 343 F. Supp. 3d at 414. As in other securities class actions, the "[p]lan [of allocation] takes into account differences in likelihood of

recovery for different portions of the [c]lass [p]eriod,"[10] and such "formula is fair and reasonable, as there is no rule that a settlement benefit all class members equally." *In re Charter Commc'ns, Inc.*, 2005 U.S. Dist. LEXIS 14772, at *33 (E.D. Mo. June 30, 2005). Funds will be distributed to Authorized Claimants via check after the Effective Date and the passing of all other applicable deadlines. Stipulation ¶7.6.

### 3. The Anticipated Request for Attorneys' Fees Is Reasonable

As set forth in the Notice, Lead Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Fund (including interest earned) and expenses not to exceed $200,000, plus interest on those amounts at the same rate as earned by the Settlement Fund, which may include an award for Plaintiff for his representation of the Settlement Class not to exceed $15,000. *See* Stipulation Ex. A-1 at 12. The Fee and Expense Application will be submitted for Court approval at the time of final approval of the Settlement. Both the United States Supreme Court and the Second Circuit recognize that counsel should be compensated for efforts expended in creating a common fund for the benefit of a class,[11] and the proposed fee is reasonable in light of the work performed and the results obtained. Moreover, there is ample precedent for granting fees of 33 1/3% in comparable securities class action recoveries. *See, e.g.*, *Lea v. Tal Educ. Grp.*, 2021 U.S. Dist. LEXIS 229314, at *36 (S.D.N.Y. Nov. 30, 2021) ("The percentage of the fund requests – one third – is a percent that has been approved as reasonable in this Circuit."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (finding that "[i]t is very common to see 33% contingency fees in cases with

[10] As set forth in the Notice, the Court dismissed the claims relating to relating to the former CEO's control of common stock, and therefore, those claims will be discounted by 95%.

[11] *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007); *see also Goldberger*, 209 F.3d at 47 ("The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost.").

funds of less than $10 million"); *Schutter v. Tarena Int'l, Inc.*, 2024 U.S. Dist. LEXIS 161838 (E.D.N.Y. Sep. 9, 2024) (awarding one-third of $3.5 million settlement, plus expenses); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367-68 (S.D.N.Y. 2002) (awarding 33-1/3% of $1.25 million settlement, plus $200,371.93 for costs and expenses). Further, Class Members will have an opportunity to comment on Lead Counsel's fee request before the Settlement Hearing.

### D. The Remaining *Grinnell* Factor Support Preliminary Approval

The few remaining *Grinnell* factors that do not overlap with Rule 23(e)(2) each support preliminary approval of the Settlement.[12]

#### 1. The Stage of the Proceedings and the Amount of Discovery Completed

The inquiry under this factor is "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. As discussed above, at the time of Settlement, Lead Counsel had conducted a thorough investigation, including drafting three detailed complaints, opposing multiple motions to dismiss, and briefing the Discovery Motion. Thus, the Settlement was reached with a full understanding of the legal and factual issues, and Plaintiff and Lead Counsel had sufficient information to effectively evaluate the Settlement.[13]

#### 2. The Range and Certainty of Possible Recovery and Defendants' Ability to Withstand a Greater Judgment

Given the complexities, uncertainties, and expense inherent in continued litigation, the proposed Settlement is in the best interests of the Settlement Class and falls within the range of

---

[12] *Grinnell* factor 2 (reaction of Class) will be addressed in Plaintiff's motion for final approval after Notice has been sent to Settlement Class Members.

[13] *See, e.g.*, *Noto v. 22nd Century Grp., Inc.*, 2023 U.S. Dist. LEXIS 187531, at *34 (W.D.N.Y. Oct. 17, 2023) ("Courts regularly approve settlements where, as here, Lead Counsel has 'engaged in sufficient investigation of the facts,' even without formal discovery.") (collecting cases).

reasonableness. *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (explaining that there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion"); *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) (holding that reasonableness must not be judged "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."). Considering the substantial risks, costs, and delay of continued litigation discussed above, Plaintiff respectfully submits that the Settlement represents a favorable recovery.

Although the Settling Defendants may have been able to withstand a greater judgment, this fact "does not necessarily preclude a finding that the settlement is fair." *McIntosh v. Katapult Holdings, Inc.*, 2024 U.S. Dist. LEXIS 226619, at *34 (S.D.N.Y. Dec. 13, 2024). *See also Christine Asia*, 2019 U.S. Dist. LEXIS 1799836, at *50 ("Plaintiffs concede it is likely that Alibaba could have withstood [a greater judgment], but correctly note that 'where, as here, the other Grinnell factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair.'"). Furthermore, Charge is no longer a publicly traded company. *Rodriguez v. CPI Aerostructures, Inc.*, 2023 U.S. Dist. LEXIS 26891, at *43 (E.D.N.Y. Feb. 16, 2023) (noting that the company no longer traded on the New York Stock Exchange as a factor relevant for consideration). Continued litigation poses the risk of not only years passing before final resolution, but extensive costs that would most certainly deplete the Settling Defendants' insurance. *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 11427, at *30 (E.D.N.Y. Jan. 21, 2022).

## IV. The Proposed Settlement Class Should Be Certified

As part of the preliminary approval of the Settlement, Plaintiff respectfully requests that the Court certify the Settlement Class for the purposes of settlement only pursuant to Rules 23(a)

and (b)(3). "The settlement class device class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. P'shps. Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). At this stage, the Court should determine whether it "will likely be able to" grant class certification of the Class at the final approval stage. Fed. R. Civ. P. 23(e)(1)(B).

Here, the proposed Settlement Class consists of all Persons and entities who purchased or otherwise acquired Charge common stock during the period from October 28, 2021, through and including February 28, 2024 (the "Class Period"). *See* Stipulation ¶1.36. The proposed Settlement Class readily meets the requirements for class certification and should therefore be certified for settlement purposes.

### A. The Settlement Class Satisfies the Requirements of Rule 23(a)

Rule 23(a) requires Plaintiffs demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Settlement Class satisfies each of these requirements.

***First,*** Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the case of "'securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 U.S. Dist. LEXIS 132181, at *9 (S.D.N.Y. Sep. 29, 2015). Here, Charge's common stock began actively trading on the NASDAQ during the Class Period and had 206,206,894,136 shares of common stock issued and outstanding as of March

1, 2023, according to its 2022 Form 10-K filed with the SEC on March 15, 2023. Therefore, joinder of all class members would be impracticable, and numerosity is satisfied.

***Second,*** the commonality requirements of Rule 23(a)(2) are also satisfied. The commonality requirement is met if "plaintiffs . . . demonstrate that common issues of law or fact affect all class members." *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D 261, 267 (S.D.N.Y. 2014). This requirement "has been characterized as a 'low hurdle.'" *Id.* Common questions of law and fact are present when the alleged fraud involves material misrepresentations disseminated to the investing public. *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012). Here, there are numerous common questions of law and fact, including relating to falsity, scienter, loss causation, and damages. Courts routinely find commonality to be met when these specific issues are common to a securities class. *See, e.g.*, *JPMorgan Chase*, 2015 U.S. Dist. LEXIS 132181, at *10-11 ("In securities fraud suits, the [commonality] requirement is met when 'plaintiffs allege that class members have been injured by similar misrepresentations and omissions.'").

***Third,*** the typicality requirement of Rule 23(a)(3) is met when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *JPMorgan Chase*, 2015 U.S. Dist. LEXIS 132181, at *11. "The test [for typicality] is not demanding, and the claims of the class representative need not be exact duplicates of all class members' claims." *Wallace v. Intralinks*, 302 F.R.D. 310, 315 (S.D.N.Y. 2014). Typicality is readily satisfied in securities class action cases when, as here, a plaintiff "intends to argue that its 'claims of fraud arise out of the same . . . schemes as the rest of the putative class.'" *In re Symbol Techs., Inc. Sec. Litig.*, 2015 U.S. Dist. LEXIS 82756, at *11 (E.D.N.Y. June 15, 2015) (alteration in original). Here, the Settling Defendants' alleged conduct

similarly affected Plaintiff and all other Settlement Class Members, and the same legal theories apply to all Settlement Class Members who purchased Charge common stock in reliance upon the same allegedly false and misleading statements and omissions and allegedly suffered damages as a result. Thus, the typicality requirement is satisfied.

***Fourth,*** Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To meet this requirement, the lead plaintiffs' counsel must be 'qualified, experienced, and generally able to conduct the proposed litigation,' and the class representatives must not have interests conflicting with the class." *Dodona*, 296 F.R.D at 268. Both adequacy prongs are easily met here where Plaintiff's interests are entirely aligned with those of the Settlement Class. As discussed above, all members of the Settlement Class allege claims arising from the same wrongful conduct and are based on the same legal theories advanced by Plaintiff. Plaintiff has maintained an active role in the litigation, including reviewing court papers and regularly communicating with counsel. This demonstrates his adequacy. Lead Counsel are highly experienced in securities class actions, and they have conducted an extensive investigation and completed substantial briefing and discovery.

**B. Rule 23(b)(3)'s Requirements Are Satisfied**

In certifying a class, a court also considers whether "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance "'is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Carpenters Pension Tr. Fund of St. Louis v. Barclays*

*LPC*, 310 F.R.D. 69, 75 (S.D.N.Y. 2015). As noted by the Supreme Court, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

As noted above, here there are common questions of law and fact, such as whether the Settling Defendants made materially false and misleading statements that artificially inflated Charge's common stock price. *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 457 (S.D.N.Y. 2013) (explaining that whether defendants' statements were materially misleading is an issue "subject to generalized proof, and thus applicable to the class as a whole") (citing *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)). In addition, reliance is presumed under the fraud-on-the-market doctrine and/or under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), and therefore, predominance is satisfied for Plaintiff's claims.

Class certification here is also the superior method for resolving the claims because the complex nature of securities class actions, the large number of geographically dispersed Settlement Class Members, and the high costs associated with individualized actions make it doubtful that most Settlement Class Members would be able to obtain relief without class status. Fed. R. Civ. P. 23(b)(3)[14]; *see also In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 120953, at *37 (S.D.N.Y. Dec. 23, 2009). Further, Settlement Class Members who desire to pursue individualized actions have the option to opt-out of the Settlement. In sum, the proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3), and the Court should certify the Settlement Class for the purposes of settlement only.

[14] As this is a settlement in lieu of trial, the Rule 23(b)(3)(D) inquiry is not required. *Amchem*, 521 U.S. at 620.

## V. The Proposed Forms and Methods of Class Notice Should Be Approved

The proposed forms of notice satisfy due process, the federal rules, and the Private Securities Litigation Reform Act (the "PSLRA"). Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and Rule 23(e) directs "notice in a reasonable manner," Fed. R. Civ. P. 23(e)(1)(B). Notice must "fairly apprise" class members "of terms of the proposed settlement and of the options that are open to them." *Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at *56.

The proposed notice program here satisfies these standards. As discussed above, Plaintiff seeks authorization from the Court to retain Epiq to oversee and administer the notice and claims process. Pursuant to the Preliminary Approval Order, individual notification will be made via mail in the form of the Postcard Notice, or email if possible, in order to save costs, within 30 days after entry of the Preliminary Approval Order to all Settlement Class Members who can be identified with reasonable effort. In addition, the Summary Notice will be published electronically once over *PR Newswire* or a similar widely circulated national wire service within 14 days after the Notice Date. Additional copies of the Notice will be available to nominee holders such as brokerage firms that held Charge common shares during the Class Period. Those nominee holders will be requested to forward copies of the Notice to all beneficial owners of such shares, or, alternatively, to provide Epiq with a list of the names and addresses of such beneficial holders so that Epiq can mail the Postcard Notice to those beneficial owners directly. Further, Epiq will create and maintain a Settlement website where Settlement Class Members can locate further information regarding the Settlement, view and download the Long Notice and the Claim Form, and be advised of pertinent deadlines.

Courts routinely approve similar notice programs. *See, e.g.*, *Too v. Rockwell Med., Inc.*, 2020 U.S. Dist. LEXIS 38480, at *6-7 (E.D.N.Y. Feb. 26, 2020) (finding that postcard notice,

along with posting of long-form Notice online and publication notice satisfied notice requirements); *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 182-83 (S.D.N.Y. 2014) (approving postcard notice directing class members to settlement website, in part, because notice via postcard "minimize[d] notice costs").

The Notice includes the information required by Rule 23(c)(2)(B) and the PSLRA, advising Settlement Class Members of, *inter alia*: (i) the reasons for and terms of the Settlement; (ii) the nature, history, and progress of the Action; (iii) that Settlement Class Members may appear through counsel; (iv) a statement of recovery; (v) the date of the Settlement Hearing; (vi) the time and manner for requesting an exclusion; (vii) the procedure for submitting a Claim; (viii) information about the proposed attorneys' fees and costs; and, (ix) how to obtain additional information regarding the Settlement, including Class Counsel's contact information. Thus, the proposed Notice contains all of the required information in "clear[] and concise[] . . . plain, easily understood language" and "fairly apprise[s] . . . members of the class" of the Settlement. *In re Take Two Interactive Sec. Litig.*, 2010 U.S. Dist. LEXIS 143837, at *42-45 (S.D.N.Y. June 29, 2010). Indeed, courts routinely find that comparable notice programs meet the requirements of due process, Rule 23, and the PSLRA. *See, e.g.*, *3D Sys.*, 2023 U.S. Dist. LEXIS 98693, at *35-38.

Accordingly, Plaintiff respectfully submits that the proposed notice program is adequate and should be approved by the Court.

## VI. Proposed Schedule of Events

Plaintiff respectfully proposes the following schedule for finalizing the Settlement.

| EVENT | PROPOSED TIMING |
|---|---|
| Deadline for establishing Settlement website and posting of Notice and Claim Form on same and for mailing of Postcard Notice to potential Class Members (the "Notice Date") | 30 calendar days after entry of Preliminary Approval Order (Preliminary Approval Order at ¶¶11-12) |
| Deadline for publishing the Summary Notice | 14 calendar days after the Notice Date (Preliminary Approval Order at ¶13) |
| Deadline for filing of papers in support of the Settlement, Plan of Allocation, and Co-Lead Counsel's Fee and Expense Application | 30 calendar days prior to the Settlement Hearing (Preliminary Approval Order at ¶26) |
| Deadline for receipt of exclusions or objections | 30 calendar days prior to the Settlement Hearing (Preliminary Approval Order at ¶¶19, 21) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order at ¶26) |
| Deadline for filing of proof of mailing of Postcard Notice and posting of Notice and Claim Form | At, or any time prior to, the Settlement Hearing (Preliminary Approval Order at ¶15) |
| Settlement Hearing | To be determined by the Court, but not earlier than 100 days after entry of the Preliminary Approval Order |
| Deadline for submitting Proof of Claim Form | 120 days after the Notice Date (Preliminary Approval Order at ¶17(a)) |

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (i) preliminarily approve the Settlement; (ii) certify the Settlement Class for the purposes of settlement only and appoint Plaintiff as Class Representative and Lead Counsel as Class Counsel; (iii) approve the proposed manner and form of Notice to Settlement Class Members and schedule for finalizing Settlement; and (iv) schedule a final Settlement Hearing.

Dated: October 13, 2026

Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, P.C.**

/s/ *Brandon Walker*
Brandon Walker
Lawrence P. Eagel
Marion C. Passmore
Melissa A. Fortunato

810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
Email: walker@bespc.com
eagel@bespc.com
passmore@bespc.com
fortunato@bespc.com

**ATTORNEY'S CERTIFICATE PURSUANT TO LOCAL CIVIL RULE 7.1(c)**

As required by Local Civil Rule 7.1(c), I certify that the document contains 8,720 words, excluding the parts of the document that are exempted by Local Civil Rule 7.1(c).

/s/ *Brandon Walker*
Brandon Walker

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 13, 2026, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF System.

Executed on October 13, 2026

*/s/ Brandon Walker*
Brandon Walker